W. P. MALONEY v. A. B. ROBERTS.

1—The validity and retrospective operation of the ordinance of the Constitutional Convention of 1866, declaring that in the application of the statutes of limitation to civil actions, the time between the 2d of March, 1861, and the 2d of September, 1866, shall not be computed, are recognized in this case; and, in consequence, a plea of limitation is held to be no answer to an action which would have been barred but for that ordinance.

2—The court trying a cause below has discretionary power to permit leading questions to a witness on his examination in chief; and if its exercise of that power be revisable at all in this court, it will not be revised unless the record discloses the circumstances under which such questions were permitted.

3—A charge given in somewhat imperative language to the jury by the court below is sustained in this case, in view of the aggravated circumstances attending the trespasses alleged as the cause of action.

APPEAL from Wood. Tried below before the Hon. Winston Banks.

This action was instituted on the 2d of April, 1866, by the appellee, Roberts, against Maloney, the appellant, for three thousand dollars, laid as damages for wrongs done to the person of the plaintiff, and for five hundred dollars as the value of his property, alleged to have been wrongfully taken by the defendant.

The petition alleged that in August, 1864, the defendant and certain other persons, who were unknown to the plaintiff, unlawfully, maliciously, and without legal process, arrested, assaulted, and, for a long space of time, imprisoned the plaintiff; that against his will they took him to the house of the defendant, where they bound his arms behind his back, cording them so tight as to sink the cord in his flesh, and otherwise cruelly treated him; that thence they took him to the woods and threatened to hang him unless he would confess to certain crimes of which he was innocent; that when so arrested, the plaintiff was possessed of a horse, saddle, bridle and blanket, worth, in the aggregate, some four hundred dollars, which the defendant took and appropriated to his own use, and refuses to account for.

The cause was continued for two or three terms, and at the Spring term, 1868, the defendant pleaded the statute of limitation of one year, having previously filed a general denial of the allegations of the petition.

The cause came to trial, when the plaintiff proved that in August, 1864, he was brought to the defendant's house by a party of men, and there kept under guard on an accusation of having stolen one of the defendant's horses; that he was taken thence across a prairie to a motte of timber, and there was some talk of hanging him unless he confessed to having stolen the horse.  There was no evidence, however, that the defendant made any threats of that kind; on the contrary, there was evidence that he said he would rather lose all his horses than that the plaintiff should be hanged.  It was in proof that a valuable horse belonging to the plaintiff was left in the defendant's possession, and the defendant stated that he was to return the horse to the plaintiff when the latter should bring up the one alleged to have been stolen.  The horse left with the defendant was valued at two hundred and twenty-five dollars.

The jury returned a verdict against the defendant for $500. The defendant moved for a new trial, which was refused, and he appealed from the judgment entered on the verdict.

The charge given to the jury was as follows: "The court instructs the jury that a conspiracy is an agreement entered into by two or more to do an illegal act, and that any person who at an after period assents thereto becomes an original conspirator, and each one becomes responsible for the acts of all, and the admissions of any one are the admissions of all.

"If two or more conspire to do an illegal act, and, in carrying into execution such unlawful agreement, commit a trespass and forcibly take from the plaintiff personal property, then the plaintiff has a right in this kind of action to recover of any such conspirator the property so taken or its value, and such punitory damages as the jury may deem necessary to punish the defendant for such wrongful act, or to deter others from the commission of like offenses.

"The court instructs the jury that if they believe from the testimony that the defendant, or the defendant and others, without authority of law, seized upon the plaintiff and deprived him of his liberty, and while so deprived of liberty subjected him to insults and annoyances from threats or otherwise, then the jury must find a verdict for the plaintiff, and assess his damages at the full currency value of the property of which plaintiff was deprived, and also for such an amount of punitory damages as the jury shall deem personal liberty worth, or such as they may think necessary to properly punish the defendant for wrongfully depriving plaintiff of his personal liberty, or to deter others from the commission of similar offenses.

"An agreement by a party in duress to give up property, is void, and the defendant, if he took the horse, under such agreement, is liable as a trespasser to the plaintiff for the currency value of said horse; and the jury may infer duress from the circumstances proved, if they deem them sufficient."

*S. P. Donley*, for the appellant.

*T. W. Jones*, for the appellee.

LATIMER, J.—This suit was instituted by Roberts, founded upon alleged injuries done to his person and property by Ma-

loney, in which he alleged the damages to his person to be three thousand dollars and to his property five hundred dollars. The time of these acts was stated to have been in 1864; the petition was filed in 1866.

Defendant pleaded the statute of limitation and a general denial. There was a verdict and judgment for five hundred dollars, and defendant appealed, and assigns as error:

First—The decision of the judge as to the statute of limitation.

Second—As to the regularity and legality of a deposition.

Third—In not sustaining objections to certain interrogatories in a deposition.

Fourth—In the general charges given and refused.

With regard to the statute of limitation, the act of 26th of February, 1863, Art. 631, would certainly apply as to the claim for damages to property; but the Ordinance No. 11, § 6, passed 30th of March, 1866, provides that "in all civil actions the time between the 2d of March, 1861, and 2d of September, 1866, shall not be computed in the application of any statute of limitation." As this suit was instituted in less than one year from the 2d of September, 1866, the plea interposing the act of limitation does not apply.

As to the second assigned error, that the certificate of the clerk to the deposition, is not legal and in compliance with the statute: since the appellant has not incorporated in the record the certificate, we are unable to adjudicate upon it, and must presume that the judge did not err.

The third error assigned, relates to the legality of the interrogatories propounded to a witness.

In 1 Greenleaf on Evidence, § 434, the author states: "In the direct examination of a witness it is not allowed to put to him what are termed *leading questions*. The rule is to be understood in a reasonable sense; for if it were not allowed to approach the points at issue by such questions the examinations would be most inconveniently protracted. The rule is not applied to that part of the examination which is merely introductory of that which is material."

We have examined the interrogatories, and agree with the appellant that they are liable to criticism as they appear.

But we are not apprised of the surrounding circumstances. If the witness showed an unwillingness to testify, or if, from lapse of time, his memory seemed defective, so that it was necessary to remind him of some admitted facts : in either of these cases, the questions would not be improper.

But as this same author, in § 435, says, "when and under what circumstances a leading question may be put, is a matter resting in the sound discretion of the court, and not a matter which can be assigned for error," it is unnecessary for us to discuss the question further.

The last exception relates to the charge of the judge to the jury.

The counsel for appellant argues this cause as if the taking the property from plaintiff was the real question and all else incidental.

This, it is supposed, is the result of the opinion so strongly urged that the violence to the person is barred by limitation.

While the truth is, the damage done to his property is really insignificant when compared to that done to the person, agreeably to the evidence. And it is for this damage principally that the suit was brought. The principles of law, we conceive, were well stated in the charge. Blackstone says : "Whenever the common law gives a right or prohibits an injury, it also gives a remedy by action." 3 Com. p. 123. Story says : "The general rule of law is this, whoever does an injury to another is liable in damages to the extent of that injury."

The charge of the judge conveyed the same idea, though the language was somewhat imperative. From the verdict rendered we are led to infer that the judge considered it his duty to so charge the law that the jury should not have a chance to avoid their duty. When we consider that the testimony was unequivocal, and contained a detail of such oppressions as causes us to wonder that such transactions are possible among civilized men ; and then to see that for all these

Statement, of the case.

injuries the verdict slightly exceeded the sum proved as due for the property taken from the plaintiff, our greater cause for wonder is, that the appellant did not rest satisfied with the verdict. We believe that no legal injustice has been done to the plaintiff in error by the verdict and judgment, and it is therefore affirmed.

Affirmed.