JOHN D. WALKER ET AL. v. WILLIAM ARMSTRONG.

(Case No. 524.)

1. WAGER ON A HORSE RACE — CONSTRUCTION OF CONTRACT.— A written contract for a horse race provided that a stake-holder selected by the parties should give the word for starting, and that the horses should "come up to the mark and start at the word ' Go.'" It was contended in a contest involving the stakes, that the word for starting was given in so loud a tone that one of the horses became frightened, and not entering the polls was not turned loose, while the other horse started and ran the distance required by the contract. Held —

1. The contract being silent as to the consequences of a failure to start when the word is given for the start in a horse race, parol evidence of custom is admissible to explain its consequences.

2. It will be presumed where the contract was silent, the parties had in view the rules of the turf. Evidence of these rules does not vary the contract, but explains the meaning of the parties to it.

VOL. LIV— 39

3. A horse race is not unlawful, and a wager on one is recoverable.

4. If the practice of horse racing leads to vicious courses, it will not tend to mend the morals of the turf, to facilitate parties in escaping from the binding force of contracts, deliberately made and not violative of law.

APPEAL from Bee.    Tried below before the Hon. D. D. Claiborne.

Suit brought by Armstrong to recover of Parchman a sum of money deposited with him as stake-holder, upon a wager between Armstrong and Walker upon a horse race. This is the second appeal. The facts now presented are as upon the former appeal, with some additional proof. See Armstrong v. Parchman et al., 42 Tex., 185.

The agreement for the horse race was in writing, and contained among other provisions the following: That Parchman "should give the word; that the horses should come up to the mark and start at the word 'Go;' that either party failing to come up and run, forfeits the $250" (put up at the time of making the agreement). It appears from the testimony (it is so alleged in the petition), that at the time appointed for the race, the men and horses appeared upon the ground prepared to run the race. The horses were brought up to the mark. Parchman gave the word "Go." Walker's horse started in the race and was rode through. Parchman gave the word in a tone so loud that Armstrong's horse was frightened; did not enter the polls, and was not turned loose in the race. Armstrong contends that his horse did not start; that no race was run; that it was not through any fault of his, but solely attributable to the conduct of Parchman. There is no fraud or complicity on the part of Parchman charged. On the other hand, Walker, in accordance with the suggestion of the court when here on appeal, amended his answer, alleging that "by the rules of the turf in

western Texas, when a race is run and a starter selected to give the word, the horses are bound to start at the word '*Go;*' that if one fails to start and the other runs through, the horse running through takes the money; that the race in this case was of that character and was so understood by the parties."

Upon the trial, the case being submitted to a jury, the defendants introduced several witnesses to prove the rules of the turf in races of like character in western Texas. "That the rule was, in a race of this kind, when there were no judges at the start, and a man was selected to give the word '*Go*,' that at the word, it mattered not if one of the horses did not start, or run the other way, the horse that run the track took the money." Major Hinkle, who testified, said "that he had been familiar with racing and its customs for twenty-seven years; that in a race such as is described in the agreement in this case, the horses were bound to start at the word '*Go*,' at all hazards; and if one of the horses failed by accident to start at the word, he lost the money; the parties took the chances that there would be no accident in getting their horses off, and took the chances that the word would be fairly given. If it were wrongfully or falsely given, the redress of the aggrieved party was against the person who gave it; that the word '*Go*' once given, the starter had no power to recall it.

The testimony of Major Hinkle was corroborated by other witnesses in every particular, and there was testimony to show that the understanding between the parties was the same. The declaration of Armstrong himself was in proof, "that in this kind of a race, at the word '*Go*,' it is a race, right or wrong.

The charge of the judge to the jury embodies the general expressions used by the court in the opinion upon the former appeal, as to the grounds upon which wagers upon horse races are sustained as legal contracts; that the main

object is to test the speed and endurance of the respective horses. And it is added, "that if the jury believe from the evidence that defendant Parchman gave the word '*Go*' in such a manner as to prevent plaintiff's horse from starting when the word was given, and consequently a test of the speed of the horse was defeated, without any fault on the part of plaintiff, they should find for the plaintiff."

The judge refused charges asked by defendants, as to the effect of the rules of the turf in western Texas, upon the controversy, worded strictly in accord with the testimony as above given, on the ground that there was not sufficient evidence to warrant the court in giving it. And also refused charges to the effect that if Armstrong failed to turn his horse loose at the word "*Go*," and that the understanding of the parties was that at the word it was a race, at all hazards and against all accidents, and that Walker's horse ran through, they shall find for the defendant.

The jury found a verdict for the plaintiff for the deposit, less the forfeit of $250. Judgment was rendered thereon, and from this judgment the defendants appealed.

*Elsberry R. Lane*, for appellant.

QUINAN, COMMISSIONER.— We are of opinion that the court erred in its charge and in refusing to give the charges asked.

There was testimony tending to show the rules of the turf in western Texas respecting horse races and contracts for horse racing like that in the present case, and the sufficiency of it was for the consideration of the jury and not the court.

If the proof was sufficient to satisfy the jury as to the existence of the rules of the turf, and what those rules were, it was proper that they should consider them in

connection with the agreement of the parties in this case, so as to arrive at a proper conclusion of its force and meaning.

"In commercial transactions, extrinsic evidence of custom and usage is admissible to annex incidents to written contracts in matters with respect to which they are silent. And the same rule has been applied to other transactions in life." Story on Contracts, 681, n. It applies as well to horse racing as to any other business. The contract for the horse race in this case must be read, and its meaning ascertained, by the light of the circumstances under which it was made, and the rules, if such there were, regulating horse racing. See the opinion in this case in 42 Tex.; Wharton on Ev., § 961.

We must assume, where the contract is silent, that the parties to it had in view the rules of the turf, and that in fact they formed part of the contract, and explain its terms and meaning and their minds in making it. Perhaps if we were to undertake the construction of the contract in this case without some knowledge of the general rules which apply to the subject, we might miss very widely its true meaning, or its proper construction. It is an agreement " to run a horse race; Walker gives sixty feet and rides 140 pounds. The horses are to come up to the mark and start at the word ' Go.' Either party failing to come up and run, forfeits $250, and Parchman is chosen to give the word and hold the stakes." What is meant by the choice of one to give the word, and his functions, or by coming up to the mark and starting at the word, and the failure to run, might not to us be very apparent, but read with the information furnished by the rules of racing, may have a very fixed and definite meaning. When did the race commence? What consequences followed from pronouncing the important word " Go?" These are questions which could only be answered upon hearing proof of their meaning, in the business or pur-

suit to which they belong. Their proper understanding must have an important bearing upon the rights of the parties to the contract in which they are used.

There is no violation of any rule respecting the alteration of written instruments by the parol proof in the admission of this testimony. It is not to vary the contract, but to explain the meaning of the men who made it (Whart. Ev., 961), and the terms they employ in the subject matter of the contract.

If, then, the proof disclosed, as we think it did, tended to prove that by the rules of racing, upon the giving of the word by the person selected as the mutual agent of parties to give it, the race was begun; that he had no power to recall the horses; that the horse that did not start lost the race, and the horse that ran through won it; that the parties took all the risks of frightened horses or imperfect or boisterous utterances,— it was error to refuse to charge as asked by the defendants, and it was error to make the result of the case depend, as the judge makes it in his charge to depend, upon the manner in which the word was given, and whether a fair test was prevented of the speed of the horses by the manner of giving the word. Parchman, who gave the word, was the agent of the plaintiff as of the defendant to give it, and unless complicity or fraud upon his part were shown, we think without regard to any racing rules, Armstrong cannot charge upon the defendants any wrong he has suffered from the negligence or unskillfulness of his own agent, whereby his horse was hindered from starting. And it may be, that the effect attributed to the giving of the word among racing men, would have a tendency, as a general rule, to insure that the best horse should win. We can see how it would prevent vexatious and worrying false starts by cunning jockeys, devised to insure that the race should not be to the swift and eager, but to the sluggard and cold-blooded. The objection made to the judgment because of

the immorality of horse racing was properly overruled: Horse racing is not unlawful. Wagers are recoverable made upon them. If the practice leads to vicious courses, it will not tend to mend the morals of the turf, to facilitate parties in escaping from the binding force of contracts deliberately entered into, not in violation of the law.

We think this judgment should be reversed and remanded for the errors indicated.

REVERSED AND REMANDED.

[Opinion delivered March 30, 1881.]