D. B. GRIGSBY ET AL. VS. JEFFERSON PEAK.

SUPREME COURT, AUSTIN TERM, 1882.

*Limitation—Married Women—Construction—Estoppel.*—Section 14, article 12, Constitution of 1869, prescribes the period of seven years as a bar of their rights of property by adverse possession, or law of limitation, as against married women. This provision is not restricted in its operation to those who, at the date of, or subsequent to, the acceptance of the Constitution of 1869, by Congress (March 30, 1879) might labor under the disabilities therein named, but controls the time intervening between twenty-eighth of January, 1861, and the thirtieth of March, 1870; during this interval of time the statutory period of five years does not apply to those laboring under the disabilities mentioned in the section quoted.

Adverse possession under a deed duly registered, begun while a married woman was under disability, and in favor of which limitation began to run August 24, 1859, by removal of disability, had not matured into a vested right or title as against such married woman on the eighteenth day of August,

1874, the date of the institution of the action to recover the land held under such adverse occupancy.

Such construction of the section of the Constitution referred to as is above given does not make its operations retroactive, in the sense that it impairs a vested right.

The question of estoppel herein presented is the same as that presented and discussed in Caruth vs. Grigsby, *post.*

Appeal from Dallas county—Opinion by Bonner, J.—The court below held, and correctly, as decided by this court during the present term, in a branch of this same case, Wm. Caruth vs. D. B. Grigsby, No. 4554, that the title of appellants and plaintiffs below, Maria Louisa Swindle and Daniel B. Grigsby, was superior to that of appellee and defendant below, Jefferson Peak, unless defeated by the statue of limitations as to appellant Maria Louisa, and by estoppel as to appellant Grigsby. The jury were charged, as as to her, upon the question of limitations, and as to him, upon that of estoppel.

The first and second assigned errors relate to the general charge as given, and the refusal of a special charge asked by appellant Maria Louisa, upon the subject of limitations, as follows:

"1.  The court erred in its charge to the jury in this, to-wit: The jury were instructed that if the defendant had peaceable ad_ verse possession of the land claimed by him, using or enjoying the same and paying taxes thereon, if any, and claiming under a deed, or deeds, duly registered, for a period of five years before the institution of this suit, excluding from said computation the period commencing on the twenty-eighth day of January, 1861, and ending March 30, 1870, Maria Louisa Swindle's claim is barred by the statute of limitations. Whereas the law is, and the jury should have been so instructed, that no such possession for a period of less than seven years would bar her claim.

"2.  The court erred in refusing the following instructions asked by plaintiff: 'You are instructed that the statute of limitations did not begin to run against the said plaintiff, Maria Louisa Swindle, until the date of her first marriage, on the twenty-fourth of August, 1859; and you are further instructed that the statute of lim. itations did not run from the twenty-eighth day of January, 1861, until the thirtieth day of March, 1870; and you are further instructed that the statute of limitations ceased to run when this suit was begun, which was on the eighteenth day of August, 1874; and you are further instructed that if the time which elapsed from the date of her marriage up to the twenty-eighth day of January, 1861,

when added to the time which elapsed between the thirtieth day of March, 1870, and the eighteenth day of August, 1874, did not amount to seven years, then the plaintiff, Maria Louisa Swindle, is not barred by the statute of limitations.' "

The case will be first disposed of as to appellant Maria Louisa Swindle. Appellee Peak, among other defenses, pleaded that of the statute of limitations of five years, which reads: "He, she, or they, who shall have had five years like peaceable possession of real estate, cultivating, using, or enjoying the same, and paying tax thereon, if any, and claiming under a deed, or deeds, duly registered, shall be held to have full title, precluding all claims, but shall not bar the government; and saving to the person, or persons, having superior right and cause of action, the duration of disability to sue arising from non-age, coverture, or insanity." (P. D., art. 4623.)

To properly define and understand the real points in issue, it becomes necessary to advert to the dates of the birth and marriage of appellant Maria Louisa, and to refer to some of our statutes and constitutional provisions on the subject of the statute of limitations.

Appellant Maria Louisa was born June 13, 1843. Before she arrived at the age of twenty-one years, August 24, 1859, she was married to her first husband. She was married to her present husband, C. C. Swindle, in 1865 or 1866. The adverse possession of appellee Peak, under deed duly registered, etc., commenced during the minority of Maria Louisa, and consequently the statute did not commence to run until the removal of the disability of infancy, by her first marriage, August 24, 1859. This suit was instituted August 18, 1874; hence the bar of the statute was complete, unless suspended by our several constitutional and statutory provisions. We will briefly refer to these.

On January 13, 1862, the Legislature passed an act to suspend the statute of limitations on bills, bonds, promissory notes and all contracts for the payment of money, until the first day of January, 1864, or until six months after the close of the present war. (P. D., art. 4630.)

On February 26, 1863, the Legislature passed an act, which took effect from passage, to suspend all statutes of limitations on civil rights of action of every kind, whether real or personal, until one year after the close of the war between the Confederate States and the United States. (P. D., art. 4631.)

The war closed, as to the State of Texas, August 20, 1866. (The Protector, 12 Wallace, 702.) One year from the close of the war would, therefore, be August 20, 1867. In the meantime, and before the one year from the close of the war had elapsed, ordinance No. 11, making valid the laws and acts of officers therein mentioned, and for other purposes, appended to the Constitution of 1866, was adopted, section 6 of which reads: "In all civil actions the time between the second day of March, 1861, and the second day of September, 1866, shall not be computed in the application of any statute of limitations." (P. D., p. 950; Id., art. 4631a.)

The validity of such ordinance is expressly recognized by this court in Stewart vs. Crosby, 15 Texas, 546, and the binding force of section 6, above quoted, was declared in the following cases: Ryan vs. Flint, 30 Texas, 382; McClelland vs. Stanton, Id. 498; Maloney vs. Roberts, 32 Texas, 139; Haddock vs. Crocheron, Id., 279; Waters vs. Waters, 33 Texas, 50.

By section 43, article 12, Constitution 1869, accepted by Congress March 30, 1870, it is provided that "The statutes of limitations of civil suits were suspended by the so-called act of secession on January 28, 1861, and shall be considered as suspended within this State until the acceptance of this Constitution by the United States Congress."

By section 14 of the same article, it is provided, that "Married women, infants, and insane persons shall not be barred of their property by adverse possession, or law of limitation, of less than seven years from and after the removal of each and all of their respective legal disabilities."

The Constitution of 1869 was superseded by that of 1876.

Under the above state of facts and provisions of the law, two questions are presented by counsel, for our decision; *first*, whether the term of five years, as prescribed by the original statute, or seven years, as provided for in the Constitution of 1869, should apply; *second*, if the bar of the statute was complete under existing laws prior to the Constitution of 1869, so as to vest into appellee Peak a right to the property, whether the constitutional convention had the power, under the Constitution of the United States, to divest this by extending the time within which appellants had the right to sue.

1. Whether the period of five or seven years should apply:

It is contended on behalf of appellee Peak, that section 14, article 12, Constitution 1869, should have a prospective effect, and should apply to those parties only who were married women, in-

fants and insane persons at the date of the acceptance of that Constitution by Congress, March 30, 1870, or should subsequently labor under such disability, and has no application to appellants who had attained their majority before its acceptance.

We are clearly of opinion that section 14, article 12, Constitution 1869, was not restricted in its operation to that class of persons who should, at the date of its acceptance, or subsequently, labor under the disabilities therein named.

Admitting the full force of the general rule, that constitutions should be interpreted prospectively, and not retrospectively, yet the exception is as well established as the general rule, that they may operate retrospectively, when it is apparent that such was the intention, provided they do not thereby impair vested rights.

It was the evident policy and express intention of the framers of the Constitution of 1869 to give a retroactive effect to the statute of limitations. It was expressly provided by section 43, article 12, that the statutes were suspended from January 28, 1861. Certainly it was not intended by section 14 of this same article, to withhold the benefits of this suspension from married women, infants, and insane persons, classes which have always been exceptions to the general laws of limitation.

The position is equally untenable, that this construction of the law is subject to the objection that it would make it a retrospective law in the sense that it would impair a vested right if the bar of the statute had not become complete. We are not considering the effect of a statute, retrospective in its character, passed under a constitution which prohibited such legislation, but of the effect of a constitutional provision itself, in which such retrospective action is made part of the organic law. The power of a subsequent State constitutional convention would, where the rights had been already vested, be equal to that of the former one, and would not be restricted by a clause in the previous Constitution prohibiting retrospective laws. Besides, it is believed that a more liberal rule should be applied to laws extending the period of limitation, when the bar was not complete, than to those which restricted this period. It is an elementary principle that the statute of limitations, as a general rule, pertains to the remedy, and not to the right, and that no one has any vested right in a particular remedy. All that he can legally demand is, that a substantial remedy remains. (Cooley on Constitutional Lim., 4 ed., 448, title, " Change of Remedies.")

In DeCordova vs, the City of Galveston, this question was fully

discussed by Chief Justice Hemphill, and after a review of the leading authorities, he sums up as follows:

"The cases to which reference has been made, and the opinion of the courts in expounding this constitutional inhibition, will serve to illustrate the intention of the convention in imposing the restriction. Laws are deemed retrospective and within the constitutional prohibition, which, by retrospective operation, destroy or impair vested rights, or rights to 'do certain actions, or possess certain things, according to the laws of the land' (3 Dall. R., 347); but laws which effect remedy merely are not within the scope of the inhibition, unless the remedy be taken away altogether or encumbered with conditions that would render it useless or impracticable to pursue it (Bronson vs. McKinzie, 1 How. R., 315); or, if the provisions regulating the remedy be so unreasonable as to amount to a denial of rights; or, for instance, if a statute of limitations, applied to existing causes, barred all remedy, or did not afford a reasonable period for their prosecution; or, if an attempt were made by law, either by implication or expressly, to revive causes of action already barred, such legislation would be retrospective within the intent of the prohibition, and would, therefore, be wholly inoperative." (4 Texas, 479; Brigham vs. Bigelow, 12 Metcalf, 270.)

The proper construction of this section 14, article 12, Constitution 1869, received the very full consideration of this court, as then constituted, in the case of French vs. Strumberry, and we have seen no reason since to doubt, in the least, the correctness of the conclusion thus reached. It was held in that case that it did not change the common law rule of construction of statutes of limitation, but that it simply extended the term within which, under previously existing statutes, those under disability had the right to sue; that in the case like the one now before the court, a married woman could not tack the disability of coverture to that of infancy, but that then the plea of limitation of five years was imposed. Had the Constitution not been abrogated, she had seven instead of five years within which to institute suit from the time of her marriage, when the statute first began to run; but if she was under disability so that the statute had not commenced to run prior to the adoption of the Constitution, had it remained in force, she had full seven years after its removal within which to sue; but that if the statute had commenced to run prior, the time which it had run should be counted as part of the seven years. (52 Texas, 111; Gautier vs. Franklin, 1 Texas, 732; Powers vs. Smith, 14 Texas, 4; Harris vs. Hardeman, 15 Texas, 467.)

2. Was the bar of the statute under existing laws prior to the Constitution of 1869 so complete as to vest into appellee Peak a right to the property in controversy, which could not be divested under fourteenth amendment to the Constitution of the United States, adopted by concurrent resolutions of Congress July 21, 1868, and which declares that no State shall deprive any person of life, liberty or property without due process of law ?

This due process of law includes, among other things, not only the right of a party to be properly brought into court, but also the right, then and there, to avail himself of the constitutional prohibition thrown around life, liberty and property; the right to be heard before condemned, and which proceeds upon inquiry; and to have judgment rendered only after trial. (Cooley's Const. Lim., 4 ed., chapter 11.)

Under the former decisions of this court (if, indeed, a decision were necessary when the language of the statute is so emphatic), our statute of limitations of five years (P. D., art. 4623), partakes both of a statute of limitations and one of property also. As said in Moody vs. Holcomb, in commenting on the statute of ten years (P. D., art. 4624), very similar in its provisions: "No naked possession for the length of time, and with the incidents enumerated in the statute, invests a party with a title or right to his land as fully and completely as it could be done by a deed or patent." (26 Texas, 719.)

This general doctrine is supported by abundant authority elsewhere. (Cooley's Const. Lim., 4 ed., 457; 3 Wash. on Real Prop., 3 ed., 145, in both of which numerous authorities are cited in the notes.)

It is the same principle declared in statute of 3 and 4 William, 4, chapter 27 (appendix to Angell on Limitations), and announced by Lord Mansfield in the leading case of Adkyns vs. Horde, 1 Barrow, 119; and laid down in Stokes vs. Berry, 2 Salkeld, 421.

If, then, under existing laws, considered in reference to the condition of the country during and for some years subsequent to the late war, a right of property in the land in controversy had vested in appellee Peak, prior to the adoption of the Constitution of 1869 (March 30, 1870), we would be clearly of opinion that a State constitutional convention even could not divest it, under the clause of the fourteenth amendment to the Constitution of the United States, above quoted, that Constitution having been made "the supreme law of the land," and it being therein declared that "the judges in

every State shall be bound thereby, anything in the Constitution and laws of any State to the contrary notwithstanding." (Const. U. S., art. 6., sec. 2.) Article 3215, Revised Statutes, is declaratory of this same principle in regard to the legal effect of this section 43, article 12, Constitution 1869.

That such State convention cannot divest rights which had already vested under the statute of limitations has been expressly decided. (Gardner vs. Stephens, 1 Heisk [Tenn.], 280; Yancey vs. Yancey, 5 Id., 353; Lockhart vs. Horn, 1 Woods' C. C. R., 635; Gunn vs. Barry, 15 Wallace, 610; White v. Hart, 13 Id., 646; see, also, for discussion of this question, Bradford vs. Shine, 13 Florida, 393.)

As has already been stated, the statutes did not commence to run against appellant Maria Louisa until August 24, 1859. From that date until February, 1863, the date of the first legislative enactment which suspended the statute as to actions for real property, five years had not elapsed. Under this act the statute was suspended until one year after the close of the war, which was one year after August 20, 1866. But before the expiration of this time, and while the statute was still suspended, ordinance No. 11 to the Constitution of 1866, which was ratified in June, 1866, was adopted, by section 12 of which it was declared that "in all civil actions the time between the second of March, 1861, and the second of September, 1866, shall not be computed in the application of any statute of limitations." (P. D., p., 950; Id., art. 4631a.)

As the bar of the statute was not, therefore, completed, either on February 26, 1863, date of the first suspension act, or in June, 1866, when the Constitution of 1866 was ratified, both the Legislature and the convention could constitutionally extend the time. It would follow, therefore, that, to September 2, 1866, date when the statute commenced to run under the ordinance, only one year, six months and eight days of the five years had elapsed. From September 2, 1866, to March 30, 1870, date when the Constitution of 1869 was adopted, was three years, six months and twenty-eight days. This, added to the one year, six months and eight days, which it had run prior to the date fixed for its suspension, would make five years, one month and six days. Thus, one month and six days more than the five years had elapsed before the acceptance of the Constitution of 1869, and, under the general doctrine laid down above, the title of appellee Peak had become vested, and could not have been im-

paired if the time between September 2, 1866, and March 30, 1870, should be counted. This should be done, unless, by reason of the unsettled state of the country at the time, the statute was virtually suspended.

We think the rule laid down in Lockhart vs. Horn, 1 Wood, C. C. R., 635, should not under the circumstances, apply to the present case, that is, "unless a country is actually occupied by hostile forces, and its laws and courts are suppressed, it would be giving the courts too large a discretion, to allow them to decide when, and when not, the statutes of limitation are in operation as between their own citizens only."

The unsettled state of the country during these years, the government by a military dictator during most of the time, the arbitrary removal of our judges and other civil officers, and the attempt to force upon the juries of the country a class, who, by previous condition and the want of common education, were wholly unqualified for such service, caused our whole judicial system to be greatly demoralized and impaired. As part of the history of these times, and as showing that the country was in a state of great uncertainty and confusion, the reconstruction act of Congress, of March 2, 1867, was passed, the preamble of which declares, that, "Whereas, no legal State government or adequate protection for life or property now exists in the rebel States of * * * Texas, etc.," and the supplementary act thereto of July 19, 1867, in which it is said to have been the true intent and meaning of the original and this supplemental act, to declare that the governments then existing in certain States, including Texas, "were not legal State governments." (2 P. D., 1087, 1094; Angell on Lim. 6 ed., § 488.)

The subsequent acceptance by Congress of the Constitution of Texas of 1869, which contained this section 43, article 12, may be considered in the light of legislative construction that the conditions of things had existed in this State, which justified a suspension of the statute from January 28, 1861, to March 30, 1870.

This condition of affairs was doubtless the main consideration which influenced the decisions in Bender vs. Crawford, 33 Texas, 745, in which a different clause of the Constitution of the United States, that of impairing the obligation of contracts, was invoked, and in which section 43, article 12, Constitution 1869, was' construed, and that line of decisions following this, including Bentinck vs. Franklin, 38 Texas, 458; Wood vs. Waelder, 42 Texas, 409.

Had the court, as now constituted, been agreed upon this ques-

tion also, we would have simply rested this opinion, upon this branch of the case, upon these authorities.

We would feel very reluctant at this late day, and when the Constitution of 1869 has been superseded, to adopt a different rule from that laid down in those cases, and which for years has been acted upon as the settled law of this State. We would only do so were we clearly of opinion that under all the circumstances these decisions were repugnant to the Constitution of the United States, and hence we are not governed by the law of *stare decisis.*

Excluding from the computation the time between January 28, 1861, and March 30, 1870, we have from August 24, 1859, date when the statute began to run, to August 18, 1874, date of the institution of this suit, a period of less than seven years, therefore the claim was not barred, and as to her the court erred, both in the charge as given and the refusal of the one asked.

It is only considered necessary to notice further the third assigned error, which relates to the question of estoppel as to appellant D. B. Grigsby.

This is as follows:

" 3. The court erred in its charge to the jury in this, to-wit: The jury were instructed that if 'Daniel B. Grigsby accepted the portion of land set aside to him by the Probate Court of Anderson county, in the attempted partition of the league and labor of land originally granted to John Grigsby, and afterwards conveyed it by deed, or deeds, referring to such partition as his source of title, he will be concluded as respects the property embraced in the partition, and you will find for the defendant, Jefferson Peak, as against the plaintiff, Daniel B. Grigsby.' Whereas the law is, and the jury should have been so instructed, that the acts of the plaintiff, Daniel B. Grigsby, referred to in the charge, could not operate as an estoppel in favor of defendant, unless defendant had acted upon the faith of such conduct on the part of plaintiff."

This precise question was presented in the case of D. B. Grigsby vs. Wm. Caruth, No. 4578, in which it was held that a similar charge was erroneous.

For these reasons, the judgment below, as to both appellants, is reversed and the case remanded.

Reversed and remanded.