GENERAL BONDING & CASUALTY INS. CO. v. McQUERRY et al. (No. 1092.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1917.)

1. SCHOOLS AND SCHOOL DISTRICTS ⚭84— CONTRACTS—BINDING FORCE.

A school board was not bound by the contracts of a party secured by a bonding company to complete the school building for the contractor for which the bonding company had been surety, nor was the party himself bound by the school board's contract with the bonding company; the contracts, though made with reference to each other, being independent undertakings between different parties.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 200, 201; Dec. Dig. ⚭84.]

2. CUSTOMS AND USAGES ⚭15(2)—CONSTRUCTION OF CONTRACTS—"WORKING DAYS."

Where a contract for the completion of a school building, the original contractor for which had defaulted, provided that the work should be

done in 90 working days, freezing weather was excluded; there being a custom with reference to the meaning of "working days," where the use of brick and cement enter into the work in winter time or freezing weather, though had there been no usage or custom in the use of the words their ordinary meaning would have been applied.

[Ed. Note.—For other cases, see Customs and Usages, Cent. Dig. § 32; Dec. Dig. ⊜⟾15(2); Evidence, Cent. Dig. § 1946.]

3. CONTRACTS ⊜⟾152 — EVIDENCE ⊜⟾456 — MEANING OF LANGUAGE—PAROL EVIDENCE.

Words in a contract will be given their ordinary meaning, unless used in a special sense, and parol evidence is frequently permitted to show they were so used.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 732, 733, 738; Dec. Dig. ⊜⟾152; Evidence, Cent. Dig. §§ 2105, 2106; Dec. Dig. ⊜⟾456.]

4. SCHOOLS AND SCHOOL DISTRICTS ⊜⟾85 — BUILDING CONTRACTS — SURETY — COMPLETION OF WORK—LIABILITY.

Where defendant, surety for the defaulting contractor for a school building, contracted with plaintiff to complete the work within a stated time, plaintiff on performance within the time could recover the balance of the price agreed on from defendant where he was defeated out of part of the money held by the school board to pay on the contract because of defendant's failure to procure an extension of time for performance from the school equal to the time allowed plaintiff for doing the work.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. § 202; Dec. Dig. ⊜⟾85.]

Appeal from District Court, Donley County; Hugh L. Umphres, Judge.

Suit by A. J. McQuerry and others against the General Bonding & Casualty Insurance Company, wherein the Bonding Company made the Clarendon Independent School District a party. From a judgment for McQuerry against the Bonding Company and for the School District as to the Bonding Company's cross-action, the Bonding Company appeals. Affirmed.

Locke & Locke, of Dallas, for appellant. A. T. Cole, of Clarendon, for appellees.

HUFF, C. J. A. J. McQuerry brought suit against the General Bonding & Casualty Insurance Company for the sum of $720, alleged to be due him under a contract with the company for the completion of a school building in Clarendon, Tex. The bonding company made the school district a party to the suit, and prayed that it might be adjudged to pay to the plaintiff such sum as might be still owing on the contract after a proper deduction as damages for delay, and that it be exonerated from liability to the plaintiff or the school district.

The Clarendon independent school district entered into a contract with W. P. Cooper for the construction of a school building in the town of Clarendon, Tex., for the consideration of $18,500. He furnished a bond to secure the performance of said contract with the General Bonding & Casualty Insurance Company as surety. Cooper defaulted in the performance of his contract, and the bonding company undertook to secure the completion of the building. On September 30, 1913, it entered into a contract with A. J. McQuerry, the plaintiff, whereby the latter undertook to complete the building according to the original Cooper contract within 90 working days thereafter. On October 1, 1913, the school district, in consideration of $375, to it paid by the bonding company, extended the time of the bonding company 90 days thereafter for the completion of said school building. The contract between the bonding company and the school district was evidenced by an order entered upon the minutes of the school board. By the terms of the contract McQuerry was to complete the building for a consideration of $12,650, $11,778 of which, being the amount of the original contract price still in the hands of the school district, he agreed to receive from the school district. $872 of the contract price was to be paid to him by the bonding company upon the completion of the building. The bonding company paid him upon the completion the sum of $872, as stipulated in the contract, and before the completion of the school building he was paid by the school district all of the sum of $11,778 except the sum of $720, which the district withheld from him as demurrage for a claimed delay.

The case was tried before the court without a jury, resulting in a judgment in favor of McQuerry against the bonding company for $636, and in favor of the school district as to the cross-action asserted by the bonding company.

In answer to the first assignment and the propositions thereunder, to the effect that the contract entered into between the appellant and McQuerry and the resolution by the school board of the Clarendon independent school district should be read together and construed as one instrument, and that the school board, in its resolution, should be held to have made a contract giving 90 working days instead of 90 days from the date thereof: Without discussing the questions of law sought to be presented, we think it is sufficient to find that the evidence will support the finding of the court that the school board did not pass the resolution or make a contract with the bonding company with reference to the McQuerry contract, and that it did not see it and did not agree to give 90 working days in which to complete the contract.

[1] Being between different parties, the school board would not be bound by McQuerry's contracts, or McQuerry bound by the school board's contract with appellant. They were not made with reference to each other, but were independent undertakings between different parties. It is doubtless true, if they had been made with reference to each other and with a knowledge of the provisions of each, the court should have construed them

together with reference to the time in which the building was to be completed. If we shall consider that Smith's testimony was in fact considered by the court, there is yet testimony contrary to his statements. We shall not undertake to say at this time whether his testimony should be considered as part of the statement of facts, when it is only shown in the record by bill of exception.

The second, third, and fourth assignments present as error on the part of the court in permitting the introduction of testimony as to the custom and usage with reference to the meaning of "working days" in buildings where the use of brick and cement enter into the work in the winter time or freezing weather. It is shown by the evidence that freezing weather will spoil the work in the laying of brick and in cement work, and that it will loosen the work; that it kills the strength of cement which would be required to be removed before work could proceed. There is no contention in the brief that no such custom and usage prevail as testified to with reference to what was meant by "working days" in this kind of a contract. It is contended by appellant that a working day, as ordinarily used in charter parties, excludes Sundays and holidays, but not rainy or stormy days, citing 8 Words and Phrases, 7521. The courts appear to hold in those cases that its ordinary use by charter parties is as stated in the citation.

[2] The testimony in this case warrants the conclusion that working days, in their ordinary use, in building of brick and cement, exclude freezing weather, for the reason that such weather spoils the work. The witnesses say that all contractors so understand and use the words, and that both parties in this case so understood it when the contract was entered into. The contract in this case must be read in the light of the circumstances under which it was made. The parties, we must assume, knew the usage of the words relative to the kind of work to be done when the contract was made, and certainly so if both so understood it. This custom in so using a word explains the meaning of the contract by the use of the term. If there was no usage or custom in the use of such words their ordinary meaning will be applied.

[3] Words will be given their ordinary meaning unless they were used in a special sense, and parol testimony is frequently permitted to show they were so used. Dwyer v. Brenham, 70 Tex. 30, 7 S. W. 598; Insurance Co. v. Reymershoffer, 56 Tex. 234; Walker v. Armstrong, 54 Tex. 609; Railway Co. v. Henry, 65 Tex. 685. Words and Phrases, vol. 8, cites a case as holding that working days within the usage of the salt trade in reference to the number of working days allowed to unload a cargo of salt does not include rainy days; as salt is not removable without damage during such weather.

The fifth assignment is to the court's find-ing of fact excluding days of freezing weather in computing the number of working days. The propositions here urged are the same as under the preceding assignments and are overruled for the reasons above given.

The sixth assignment is overruled for the reasons given in overruling the first assignment.

[4] The seventh assignment is overruled. The appellant agreed with appellee to pay him a stipulated price for the construction of the building; he to finish the work in a given period of time of working days. The school board had only given an extension to appellant of 90 days to complete the building. It was the duty of appellant to have procured the same time from the board that it gave McQuerry in which to do the work, and having failed to do so, under the original contract, McQuerry was defeated out of the full sum of money held by the school board to pay upon the contract, when, as a matter of fact, he had performed his part of the contract with the bonding company. This was not his fault, but was owing to appellant's own neglect or oversight in procuring a proper contract from the school board. It must therefore suffer the loss.

The judgment is affirmed.