**MILLER & MILLER MOTOR FREIGHT LINES v. GILLILAND et al.**

No. 15159.

Court of Civil Appeals of Texas.
Fort Worth.
Sept. 15, 1950.

Rehearing Denied Oct. 13, 1950.

Nelson, Montgomery & Robertson, and Lee Sellers, all of Wichita Falls, for appellant.

Rogers & Johnson, and Kearby Peery, all of Wichita Falls, for appellee L. A. Gilliland.

Bullington, Humphrey, Humphrey & Fillmore, all of Wichita Falls, for appellee Hearne Motor Freight Lines, Inc.

HALL, Justice.

Appellee L. A. Gilliland in August, 1948, was residing in the City of Hobbs, New Mexico. On or about that date he negotiated with appellee Hearne Motor Freight Lines, Inc., to ship certain household goods to a residence in Wichita County, Texas. Appellee Hearne Motor Freight Lines, Inc., delivered the goods to Lubbock, Texas, and appellant Miller & Miller Motor Freight Lines transported the merchandise into Wichita Falls.

Appellee Gilliland assisted appellee Hearne Motor Freight Lines in loading the household goods at Hobbs, New Mexico, and three hours later he departed from Hobbs to Wichita Falls to attend the bedside of his sick wife. There was no bill of lading issued or given him in the process of shipment. After the goods were shipped from Hobbs, New Mexico, appellee Hearne Motor Freight Lines issued and delivered a bill of lading to appellee Gilliland's mother, who lived in Hobbs, New Mexico; she later mailed it to appellee Gilliland.

When the shipment was delivered to appellee Gilliland in Wichita Falls, Texas, there was missing one chest of tools, weighing 130 pounds, which he proved in the trial of the case to be worth $322.50.

Hereinafter appellee L. A. Gilliland will be designated as appellee; appellee Hearne Motor Freight Lines, Inc., will be designated as Hearne; and Miller & Miller Motor Freight Lines will be designated as appellant.

Appellee sued both Hearne and appellant in a district court of Wichita County, Texas, it having jurisdiction by virtue of local statutory provision conferring county court jurisdiction to the district court. Trial was to a jury which found in answer to special issues that Hearne agreed with appellee (1) that it would ship the goods in question from Hobbs, New Mexico, to Wichita Falls,

Texas; (2) that Hearne accepted the goods from appellee without issuing a bill of lading; (3) that appellee was not notified by Hearne at the time that if it agreed to ship the goods in question there would be a limitation of liability based upon weight and rate of shipment; (4) that appellee has been ready and willing to pay the necessary rate to insure the delivery of his goods for full value of the freight; (5) that the reasonable cash value of the carpenter tools in question was $322.50; (6) that reasonable attorney's fee for appellee's attorney was the sum of $100.00; (7) that the carpenter tools and chest in question have not been delivered to appellee; (8) that appellee did not, either expressly or impliedly, assent to the terms of the bill of lading as made out on the goods in question; and (9) that L. A. Gilliland did not authorize the driver who loaded the goods in question to ship same in accordance with the bill of lading as evidence in the case.

The trial court entered judgment for the sum of $322.50, plus $29.02 interest, less difference between freight paid and the highest rate of pay chargeable, to-wit, the difference between $31.45 and $9.08, plus $20.00 for reasonable attorney's fee. The judgment was in behalf of appellee and against both carrier companies, with judgment being rendered in favor of Hearne over against Miller & Miller. From said judgment Miller & Miller brought this appeal based upon two points, to-wit:

"1. The error of the Trial Court in rendering judgment in excess of Thirteen Dollars ($13.00) for the plaintiff, he being limited by law to such recovery herein.

"2. The error of the Trial Court in rendering judgment in favor of the Appellee, Hearne, and against the appellant, insofar as the same exceeded the sum of Thirteen Dollars ($13.00), the said Appellee having delivered the goods in question to the Appellant with a notation limiting liability to such amount."

There was no declaration of value by the shipper and no bill of lading or receipt was issued and delivered to shipper, although a bill of lading was made out displaying the value of the household goods

involved to be 10¢ per pound. If the shipper had agreed to such value, he could not have recovered more than such agreed value.

It is the theory of appellant, however, that appellee shipper was limited in his recovery for the missing box of tools to the sum of 10¢ per pound thereof. Under the above stated facts, if appellant prevails under such contention then it is readily seen that the provisions of the Interstate Commerce Act destroy the right to recover by common law even though no contract of value between the carrier and shipper exists.

So the issue presented to this court is whether the defendant was liable for the full value of the goods lost or for only the lesser valuation on which the rate charged for transportation was based.

There is no dispute that both carriers were common carriers, expressly authorized or required by the Interstate Commerce Commission to establish and maintain rates dependent upon the values declared in writing by the shipper or agreed upon in writing as the released value of the property according to the Interstate Commerce Act, 49 U.S.C.A. §§ 20, paragraph (11) and 319, and that both carriers did establish and maintain such rates at the time they accepted the property for transportation. Appellant introduced in evidence its schedules promulgated under such Act. The question before this court is settled in the case of Caten v. Salt City Movers & Storage Co., Inc., 2 Cir., 149 F.2d 428, 432, wherein the court stated the following:

"The second Cummins Amendment, adopted in 1916, 39 Stat. 441, made further changes which are reflected in the above quotation from § 20(11) of the Act. It was made obligatory upon every initial common carrier accepting property for interstate shipment to issue a receipt or bill of lading therefor and liability was imposed upon it for the full actual loss or damage to the property sustained during carriage by it or by a connecting carrier under a through bill of lading. So as the law now stands the only limitation of liability permitted is conditioned upon a compliance with the proviso of which the material part has already been quoted. Any attempt to limit liability is prohibited except upon a declaration of value by the shipper in writing or upon a released value agreed to in writing. * * *

"The statute makes it abundantly clear that the carrier's common law liability for full actual damages, whether or not caused by its negligence, is imposed when it accepts goods for carriage, unless a certain specified agreement limiting that liability has been made as the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods. Even then the carrier is not permitted to contract against liability for its own negligence. Only by giving the shipper an opportunity to choose between higher and lower rates based upon valuation can the carrier place the shipper who has selected a lower rate in the prescribed manner in the position where he is estopped to assert loss or damage to an amount in excess of the declared valuation upon which the rate was fixed. (Citing cases.) Here nothing was done by the shippers which amounted to written action by them as to valuation, and any agreement limiting the defendant's liability to less than the actual value was void. Therefore it was correct for the district court to instruct the jury that the defendant was liable for the full value of the plaintiffs' goods."

We have read other cases holding the above rule to be the law. Appellant relies principally upon the cases of American Railway Express Co. v. Lindenburg, 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414; American Railway Express Co. v. Daniel, 269 U.S. 40, 46 S.Ct. 15, 70 L.Ed. 154; Boston & M. Railroad v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868, L.R.A.1915B, 450, Ann.Cas.1915D, 593. We have carefully read these cases and do not find them controlling under the facts in this case.

Appellant contends under its second point that Hearne Motor Freight Lines should be primarily liable because: First, it was incumbent upon Hearne at the time of accepting the goods for transportation to issue a

valid bill of lading, etc.; second, Hearne misrepresented the contract it had made with appellee to appellant by placing on the freight bill received by appellant the notation, "Released at $10.00 per C. W. T."; third, appellant could have rejected for transportation the entire shipment had the facts surrounding the transaction been known to it; and fourth, not having had an opportunity to know the facts in the case and having been led by Hearne in accepting the goods for transportation through its misrepresentations, appellant should not now be held to a greater liability, which should properly be placed upon Hearne.

It is undisputed by appellant that it received the merchandise lost. We do not find that Hearne misrepresented the facts to appellant but that it was appellant's negligence in not calling upon Hearne to produce a bill of lading or other writing signifying an agreed valuation of said property by the shipper.

■ Under sec. 20, par. 11 of the Interstate Commerce Act, both initial and delivering carrier are jointly and severally liable for loss but we find the court in this case did not err in rendering judgment against appellant and only secondarily against Hearne because it is conceded by appellant that loss of the property occurred while in its possession.

Appellee's counterpoint is to the effect the trial court erred in allowing him only $20 for attorney's fees when the jury in answer to special issue No. 6 allowed him $100 for attorney's fees.

■ This cause of action accrued in the year 1948. At that time Article 2226 allowed $20 as attorney's fees under certain conditions. In 1949, Article 2226 was amended, Vernon's Ann.Civ.St. art. 2226, allowing in such cases a reasonable attorney's fee wherein final judgment was obtained. The substance of appellee's contention is that the statute should be construed to have a retroactive or ex post facto effect. Our Supreme Court in the case of Freeman et al. v. W. B. Walker & Sons, Tex.Com. App., 212 S.W. 637, wrote upon this question as was then contained in Article 2178,

R.C.S. 1911. The court held in that case, in substance, that while it is presumed the Legislature of Texas intended to exercise its authority to make laws within the scope of its powers under the Constitution of this state, yet, under Article 1, sec. 16, of our Constitution, Vernon's Ann.St. it is provided: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." It has been held by our Supreme Court that statutes cannot be held to have a retroactive or ex post facto effect unless their language compels it. Texas & N. O. R. Co. v. Wells-Fargo Express Co., 101 Tex. 564, 110 S.W. 38. All statutes are held to operate prospectively unless the contrary construction is evidently required by their plain and unequivocal language. Cox v. Robison, 105 Tex. 426, 150 S.W. 1149.

It has also been held by our Supreme Court, in substance, that while the State Constitution should as a general rule be interpreted to operate prospectively, its retrospective operation will be enforced when such was clearly the purpose of its framers, provided no right already vested would be disturbed thereby. Grigsby v. Peak, 57 Tex. 142.

■ Be that as it may, the emergency clause of Article 2226, as amended in 1949 reads as follows: "The fact that it is practically impossible to obtain legal services for the purpose of collecting the claims described in this Act under the present law creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be and the same is hereby suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted." Acts 1949, c. 494, § 2. It is noted therein that the Act shall take effect and be enforced from and after its passage. See also Travelers Ins. Co. v. Marshall, 124 Tex. 45, 76 S.W.2d 1007, 96 A.L.R. 802; Langever v. Miller, 124 Tex. 80, 76 S.W.2d 1025, 96 A.L.R. 836.

Finding no error in the trial court's judgment, the same is affirmed.