## LEWIS v. JONES.
### No. 12435.

Court of Civil Appeals of Texas. Galveston.
July 17, 1952.

Rehearing Denied Oct. 9, 1952.

Collier & Pepper, J. A. Collier, Morris Pepper, Fred Lewis, Houston, for appellant.

Fulbright, Crooker, Freeman & Bates, Eugene Cavin, Sam Hood, Jr., Houston, for appellee.

CODY, Justice.

This was a suit by appellee, a general contractor, to recover from appellant the balance of the unpaid contract price for the construction of a building in the City of Houston, which appellee alleged he had performed according to the terms of their written contract. And, as ancillary to his suit, appellee sought to impress a statutory lien upon the building and premises, to foreclose it, and to recover attorney's fees. Appellant answered with a general denial, and a cross-action alleging that appellee had not substantially performed the contract, and sought damages. The court, trying the case without a jury, rendered judgment awarding appellee judgment for the sum sued for, being in excess of $9,-000, and attorney's fees in the sum of $20. No conclusions of fact and law were requested, and none were filed. Appellant has appealed from the judgment, except as to the amount of attorney's fees. Appellee has appealed from the amount awarded as attorney's fees.

The contract was executed on November 25, 1947, on a form bearing the name of appellant's architects, which bore the warning that the "material" used therein could

only be used with the permission of the American Institute of Architects. The contract provided that work thereunder should begin not later than November 28, 1947, and should be completed within 125 working days, with $25 per day liquidated damages. The contract price was $40,837. It was not disputed that the work was not completed until November 18, 1948, or a total of 356 calendar days. The contest largely concerned what the parties meant by "working days".

The parts of the contract material on this appeal are the following (The portion of the contract which is printed in the form is italicized; the remainder was typewritten):

"*Article 2. Time of Completion— The work to be performed under this Contract shall be commenced* not later than November 28, 1947, *and shall be substantially completed* in one hundred twenty-five (125) *working days.*

*(Here insert stipulation as to liquidated damages, if any,)* and from the compensation otherwise to be paid, the Owner may retain the sum of $25.00 for each day thereafter, (Sundays, whole holidays not included) that the work of the General Contractor remains incomplete and unacceptable to the Architects, which sum is agreed upon as the proper measure of liquidated damages which the Owner will sustain per diem by failure of the General Contractor to complete the work by the time stipulated, and this sum shall not be construed in any sense a penalty."

(The trial court apparently adopted the view that the forepart of Article 2 specified the time of completion, and that the remainder, which we have indicated by the break was concerned with the stipulation as to stipulated damages.)

"*Article 5. Acceptance and Final Payment—Final payment shall be due* 30 *days after substantial completion of the work provided the work be then fully completed and the Contract fully performed.*

"*Upon receipt of written notice that the work is ready for final inspection* and acceptance, the Architect shall promptly make such inspection, and when he finds the work acceptable under the Contract and the Contract fully performed he shall promptly issue a final certificate, over his own signature, stating that the work provided for in this Contract has been completed and is accepted by him under the terms and conditions thereof, and that the entire balance found to be due the Contractor, and noted in said final certificate, is due and payable.

"Before issuance of final certificate the Contractor shall submit evidence satisfactory to the Architect that all payrolls, material bills, and other indebtedness connected with the work have been paid.

"If after the work has been substantially completed, full completion thereof is materially delayed through no fault of the Contractor, and the Architect so certifies, the Owner shall, upon certificate of the Architect, and without terminating the Contract, make payment of the balance due for that portion of the work fully completed and accepted. Such payment shall be made under the terms and conditions governing final payment, except that it shall not constitute a waiver of claims.*"

By letter dated January 4, 1949, addressed to appellee, the Architects notified appellee that there was being transmitted under separate cover voucher for $8,401.46 "for final payment on the above building:

"This is to advise that we find that the work completed as per your contract * * and the plans and specifications."

The balance of the principal sued for was the amount of the voucher, $8,401.16, which was not in fact paid.

Appellant's points 1 and 2 complain that the court committed reversible error in admitting evidence of custom as to the meaning of the term "working days" (1) since the contract itself defined working days, and (2) since there was no pleading of custom. His points 3 and 4 complain of the judgment as being based upon evidence of custom as to the meaning of "working days" (3) since appellee failed to sustain the bur-

den of proving appellant had knowledge of said custom, and (4) since appellee failed to prove any such custom existed at the time the contract was executed. And in his 5th point, appellant complains of the judgment for not allowing appellant deductions of $25 per day for each day, after 125 working days, he alleged appellee failed to complete the building.

By Article 2 of the contract, quoted above, the parties stipulated that appellee should be allowed 125 "working days" in which to construct the building in accordance with the plans and specifications. By said Article the parties additionally stipulated that in case appellee failed to substantially complete the building within the 125 "working days" that the appellant should be allowed to deduct from the contract price as liquidated damages the sum of $25 per day for each day in excess of the 125 "working days" that it took the contractor to so complete the building, excepting from such excessive days it might take the contractor to complete the building any right in appellant to liquidated damages for any Sundays or holidays so in excess of the 125 "working days". The reason for such exception was that the building was being constructed for commercial use and would not be occupied on Sundays or holidays and so appellant would not be entitled to, and should not be allowed, liquidated damages for the said days so excepted.

■ We overrule appellant's first point. There was nothing uncertain or ambiguous about what the parties meant by excepting Sundays and holidays from being taken into account in determining liquidated damages. The interpretation, therefore, of the provision so excepting Sundays and holidays was a question of law for the court, and we must assume that the court determined the intention of the parties as so expressed by them in excluding Sundays and holidays as a matter of law; and as a matter of law ruled that the parties did not intend by the parenthetical "(Sundays, whole holidays, not included)" to define "working days". In other words, the admission by the court of evidence of custom as to the meaning of the term "working days" had no bearing what-

soever as to the meaning of the term "working days" as used in Article 2.

■ We overrule appellant's second point. Both appellee and appellant based their respective causes of action upon the provision relative to 125 "working days". Appellee sought to recover the balance of the contract price upon the allegation that he had substantially completed his contract in 125 working days "except for such working days as plaintiff was prevented from working because of the faults of defendant or because of weather conditions or other circumstances beyond plaintiff's control." Appellant leveled a special exception at appellee's pleading just quoted, but not on the ground that his allegations with reference to 125 days did not apprise appellant of what appellee would prove with respect thereto. Appellant specifically excepted to the quoted pleading solely on the ground that the same was insufficient to apprise appellant what specific *faults* of appellant appellee was complaining of.

Not only did appellant waive any objection to the pleading as to what was meant by 125 "working days", but by his cross-complaint he himself alleged that appellee was bound by the building contract to complete the building in 125 "working days" and alleged that appellee failed so to complete the building "in the 125 working days" and sued to recover $10,000 for such failure.

Appellant does not complain that the evidence introduced by appellee as to the meaning of the term "working days" as used in the contract did not truly present what said term did mean in the building trade. He does not complain that he was in any way surprised by the evidence so introduced by appellee in support of said allegation. Neither did appellant contend that days did not occur when the weather made it impossible to carry on the construction of a building. When parties to a contract for the construction of a building use words which are words of "art" in the construction trade, they must be taken to have used such words in the sense in which the same are used in the construction trade. It is not contended that appellee was any more responsible for the use of the words "working days" in the

contract than was appellant. And the parties are accordingly bound. We do not understand that appellant contends that he and his architects did not in fact know what was meant by "working days", and that the evidence did not truly apprise the court of such meaning. He is mistaken, we believe, in assuming that, in the state of the pleading, the court was not authorized to receive such evidence. General Bonding & Casualty Co. v. McQuerry, Tex.Civ.App., 191 S.W. 858; Wright v. King, Tex.Civ.App., 17 S.W.2d 98, writ refused.

Appellant does not complain that the evidence admitted by the court was not sufficient to sustain the court's presumed findings of fact to the effect that, exclusive of "working days" when construction could not go forward because of appellant's faults, appellee substantially completed the building according to plans and specifications, within 125 working days.

From what has been said, it follows that appellant's points 3–5, inclusive, must be overruled.

By his pleadings on which he went to trial appellee sought to recover attorney's fees in the sum of $3,360.46, under the provisions of R.C.S. art. 2226, as amended in 1949, Vernon's Ann.Civ.St. art. 2226, the effective date of such amendment being June 29, 1949. Appellee's claim against appellant had completely matured prior to the effective date of aforesaid amendment. However, subsequent to such effective date appellee presented his claim for services rendered, labor done, and material furnished, and after the expiration of thirty days from such presentation of said claim, it had not been paid or satisfied. And it is appellee's contention that he was entitled to recover reasonable attorney's fees under Article 2226, as amended in 1949, and was not limited to the $20 attorney's fees provided for in said Article before the effective date of said last amendment.

We believe there are only two reported cases involving the determination of when the amendment allowing reasonable attorney's fees became effective. The Ft. Worth Court of Civil Appeals held in Miller & Miller Motor Freight Lines v. Gilliland, 232 S.W.2d 886 (writ dismissed), that the provi-

sion substituting *reasonable* attorney's fees, for attorney's fees, limited to $20, could only be applied to claims which arose after the effective date of the amendment. The ruling was based on the case of Freeman v. W. B. Walker & Sons, Tex.Com.App., 212 S.W. 637, and upon the provisions of the emergency clause attached to the Article as amended. In the Freeman case, the Commission of Appeals in substance ruled that the Article which was enacted in 1909, and which, with changes, has now become art. 2226, could operate only prospectively in virtue of art. I, Sec. 16 of the State Constitution, Vernon's Ann.St., reading, "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." In an opinion delivered in an unreported case we followed the Gilliland case, supra, and this no doubt led the learned judge to limit appellee's attorney's fees to $20.

In the case of Government Personnel Mutual Life Insurance Company v. Wear, Tex.Civ.App., 247 S.W.2d 284, 289, the San Antonio Court of Civil Appeals held that art. 2226 as amended does not require that the claim must have accrued subsequent to the effective date of the amendment, "but simply provides in part that a person having a claim * * * who presents such claim and it is refused after the effective date may collect [reasonable] attorney's fees."

Art. 2226, as so amended, reads, in part, "Any person having a valid claim * * * may present the same * * *; and if, at the expiration of thirty (30) days thereafter, the claim has not been paid or satisfied, and he should finally obtain judgment * * he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees, if represented by an attorney."

Prior to the amendment, any person having a valid claim for personal services rendered, labor done, or material furnished, had the right under the Article to recover attorney's fees not in excess of $20, under the same terms which the amendment now authorizes the recovery of reasonable attorney's fees. The provision relative to allowing reasonable attorney's fees instead of an arbitrary $20 attorney's fees, did not, we believe, violate the constitutional limitation

946

against enacting retroactive laws. After the amendment, appellant was charged with notice that if he refused payment, after the expiration of thirty days he would be liable for reasonable attorney's fees. That is to say, the provision for reasonable attorney's fees operated prospectively, and not retroactively. Had the amendment included the right to recover attorney's fees for personal injuries, a subject matter which has never been included, such a provision could apply only to attorney's fees on a claim for personal injuries suffered after the effective date of the amendment.

We sustain appellee's cross-point, and reverse so much of the judgment as awarded $20 attorney's fees, and remand the cause for the sole purpose of the court hearing evidence on, and fixing therefrom, reasonable attorney's fees. Except as so reversed and remanded, the judgment is sustained.

On Original and Amended Motions for Rehearing.

■ Since our original opinion was filed in the foregoing case, the Supreme Court has held in Government Personnel Mutual Insurance Company v. Wear, 251 S.W.2d 525, under facts which are the legal equivalent of the facts in this case that the provision of art. 2226, which allowed $20, before it was amended to allow reasonable attorney's fees, applies.

We, therefore, withdraw our former holding so contrary to that of the Supreme Court, and affirm the judgment of the trial court as rendered, which limited recovery of attorney's fees to $20.

Except as herein specified, motions for rehearing are refused.