**EDWARDS v. WORTHINGTON et ux.**

No. 4893.

Court of Civil Appeals of Texas. Amarillo.
May 16, 1938.

Rehearing Denied June 20, 1938.

Marvin Roberson, Jim Gaddy Norris, and A. W. Christian, all of Fort Worth, for appellant.

John D. McComb, of Jacksboro, for appellees.

STOKES, Justice.

Appellant, S. B. Edwards, brought this action in trespass to try title against appellees, L. A. Worthington and his wife, Nettie, seeking to recover 6049 acres of land located in Jack County, and for rents and damages which he alleged had accrued to him by reason of appellees' wrongful possession. The land involved in this suit,

together with a large amount of other land, was formerly owned by E. R. Worthington, and on April 1, 1928, he executed and delivered to appellee, his son, a grazing lease on it for a period of ten years, in consideration of which appellee agreed to pay all taxes assessed against the land by the Federal Government and by the State, County and School District, the taxes to be paid each year before becoming delinquent. It was provided that the land would be used for grazing purposes only and that the lessee should protect it from injurious depredations and keep in good repair all fences and other improvements.

On June 11, 1935, appellee sub-leased 4000 acres of the land to one French Arrington. On October 12, 1931, almost three years after the lease was executed, E. R. Worthington died, leaving his wife, Ada F. Worthington, and six children, two of whom were Mary E. Tibbins and Wilna Wible. He left a will in which he devised to appellee 4000 acres of a tract of 12,000 acres in Jack County, and to the other five children, the remainder of the 12,000 acre tract. He devised to his six children all of the remainder of his real estate except a life estate to his wife in the residence of himself and wife, and the will contained provisions for charging advancements made to his children during his lifetime. On October 12, 1935, a partition deed was executed by the six children, joined by their respective wives and husbands, in which the land in controversy in this case was set apart to Mary E. Tibbins and Wilna Wible, and certain other properties therein described were set apart to appellee and his three brothers. From this partition deed there was reserved an undivided three-fourths interest in the oil, petroleum, gas, coal, asphalt and all other minerals of every kind and character in and under, or that may be produced from any of the land, which reserved interests had been conveyed to C. A., L. A., and J. L. Worthington by E. R. Worthington before his death.

On December 20, 1935, Mrs. Tibbins and Mrs. Wible, joined by their husbands, conveyed the land to W. E. Bass and the latter, on January 20, 1936, conveyed it to appellant by a general warranty deed, a portion of the consideration for the latter conveyance being a note in the sum of $35,000, bearing interest at the rate of 5½% per annum.

The preliminary negotiations for the purchase of the land by appellant from Bass resulted in a sales contract which was executed October 30, 1935, and contained a clause to the effect that it was understood and agreed by the purchaser and the seller that appellee held a grazing lease on the entire tract which would expire December 31, 1937. It further provided that the purchaser, in lieu of possession of the south 4000 acres which had been sub-leased by appellee to Arrington for grazing purposes, should have credit on the note to be executed for the full amount of the interest to December 31, 1937, the expiration date of the lease. It further provided that the parties understood and agreed that appellee L. A. Worthington held a grazing lease on the entire acreage which would expire December 31, 1937, and that the seller would make an effort to deliver to the purchaser the north 2000 acres, which evidently was that part of the entire tract that was left after appellee had delivered to Arrington the 4000 acres sub-leased to him, but in case the seller were unable to procure a release from appellee of the grazing lease, then the buyer, appellant, agreed to accept the land and allow appellee and those leasing under him to continue to use the property until the expiration of the lease, which, as stated, was December 31, 1937. It was provided in the contract that if the north 2000 acres should not be delivered to the purchaser, he should have a further credit on the note of $5,000 and, in that event, the contract provided that appellee should continue to use the entire land here involved under the terms of his lease from E. R. Worthington, deceased.

Appellee answered by plea of not guilty. At the conclusion of the testimony the parties agreed that the annual rental value of the land for grazing purposes was 60¢ per acre, and that it would not be necessary for the court to submit to the jury the issue of rental value.

Each party presented a motion for an instructed verdict and the trial court overruled appellant's motion and instructed the jury to return a verdict in favor of the appellee, who was defendant below, and, the jury having done so, judgment was rendered that appellant take nothing by his suit and that defendants go hence without day and recover their costs. Appellant duly excepted to the judgment of the court, gave notice of appeal, and perfected his appeal to the Court of Civil Appeals of the Second Supreme Judicial District at Fort Worth. Upon an order equalizing the dockets of

the Courts of Civil Appeals, the case was ordered transferred to this court by the Supreme Court, and it is presented here upon the assignments of error and propositions which we shall discuss.

■■■■ The first contention made by appellant is that, by joining in the partition deed, appellee conveyed to his sisters, Mrs. Tibbins and Mrs. Wible, the lease-hold interest in the land which he procured from his father, E. R. Worthington, and, having purchased their interests and title, and the same having been conveyed to him, he was entitled to judgment for the complete title and possession, including the lease-hold interest of appellee under the grazing lease. In this connection he contends further that the partition deed was an implied warranty and that appellee is bound by the warranty and estopped by the deed and implied warranty from asserting any title or interest in the land allotted to Mrs. Tibbins and Mrs. Wible by the partition deed. These contentions are based upon the general rule that a deed will pass whatever interest or title the grantor may have in the land conveyed by it unless it contains provisions or words are used which show an intention to convey a less estate. There is no doubt that, generally speaking, appellant is correct in this contention when the reference is to deeds and conveyances in general. An entirely different rule applies, however, to deeds of partition. It has many times been held that partition deeds are not deeds of conveyance and there is nothing in the record in this case which indicates the parties to the partition deed had in contemplation anything more than is implied by an ordinary deed of partition. The rule governing such deeds is that they do not confer title upon either of the parties who sign them, but their effect is only to dissolve the tenancy in common, and leave the title as it was before, except to segregate the rights of the owners and locate such rights as the parties may have respectively in the distinct parts of the premises and to extinguish such rights in such specified and allocated parts as may have been owned by the other parties respectively prior to the execution of such deeds. Davis v. Agnew, 67 Tex. 206, 2 S.W. 43, 376; Chace v. Gregg, 88 Tex. 552, 32 S.W. 520; Aycock v. Kimbrough, 71 Tex. 330, 12 S.W. 71, 10 Am.St.Rep. 745; Wilson v. Beck, Tex.Civ.App., 286 S.W. 315; Reyes et al. v. Kolberg, Inc., Tex.Civ.App., 101 S.W.2d 351.

The facts in the case of Chace v. Gregg, supra, were very similar to the facts in this case. Mary A. Gregg was the second wife of Darius Gregg, who was possessed in his separate right of real estate and personal property, and also a community estate between himself and Mary A. Gregg. In his will he bequeathed to W. B. Gregg, a son by his first wife, certain property in the city of Houston, and certain other property to his wife, Mary, with remainder to his son upon contingency that no children were born to Mary. After the father's death, partition was made by warranty deeds, which were exchanged between the son and surviving wife, containing provisions of general warranty, in which certain property described in the deeds was partitioned. Prior to the partition, Mary married Jacob Chace, who joined her in the partition deed, and she afterwards died without issue. The suit was between the children of W. B. Gregg, deceased, and Jacob Chace, to whom his deceased wife, Mary, had bequeathed the land set apart to her in the partition, and the Supreme Court held that under the will of Darius Gregg, Mary A. Chace took only an estate in fee, determinable upon the condition expressed, viz., that she should die without issue, in one-half of all the property in controversy except what had been given to W. B. Gregg in the will and that at the time of the partition, she had no interest in that portion of the property specifically devised to W. B. Gregg nor in the undivided one-half so devised to him, and that Mrs. Chace acquired no additional title by virtue of the deed from W. B. Gregg, but that she held the property set apart to her in the partition under the terms and conditions expressed in the will of Darius Gregg. The opinion contains a statement of the rule which has been followed and adhered to by the courts of this state through all of its judicial history, viz. (page 522):

"A partition between joint owners does not confer title upon either, but has the effect only to dissolve the tenancy in common, and leave the title as it was before, except to locate such rights as the parties may have, respectively, in the distinct parts of the premises, and to extinguish such rights in all other portions of that property." Citing Arnold v. Cauble, 49 Tex. 527, 530; Davis v. Agnew, supra.

The partition deed involved in this case was drawn in the ordinary form of such deeds. Its preamble is that the parties are

**332**

children of E. R. Worthington, deceased, and legatees and devisees under his last will and testament, which will has been probated. It contains the clause that "Whereas, said parties are the joint owners of and have and hold in common the lands and premises hereinafter mentioned, subject to the provisions of said will," and reserves from its operation the three-fourths of the mineral rights that had been conveyed by the testator. It sets apart to the six children and legatees, respectively, designated portions of the lands, and contains no express provisions of warranty. The effect of the grazing lease that had been executed by E. R. Worthington before his ·death was to invest appellee with an estate for years, and the term had not expired when the partition deed was executed. The estate conveyed to appellee by the grazing lease was, therefore, not a portion of the estate of E. R. Worthington, but· belonged to appellee. There is nothing in the partition deed which indicates the parties to it, or any of them, intended that any greater estate than that which they had procured from their deceased ancestor should be affected by its terms. Appellee testified that he thought the purpose of the partition deed was to partition the estate of his father and the record does not show he received any consideration for a relinquishment of his rights under the grazing lease. This, together with the conduct of the parties at the time and after the partition deed was executed, would seem to indicate a common understanding among them that nothing was intended by any of them more than to partition and divide among them the property and estate which they had received from their father as legatees under his last will and testament.

Under the rules of interpretation which have consistently been applied to deeds of partition by our courts and the facts revealed by the record in this case, we are impelled to the conclusion that appellee's grazing lease was in no manner affected by the partition deed and appellant's assignments raising this question are, therefore, overruled.

Under appropriate assignments of error, appellant contends that the partition deed was an implied warranty which carried with it any interest to which appellee was entitled under the grazing lease. The partition deed did not contain any expressed covenants of warranty, but we think such warranty as ordinarily accompanies such deeds may fairly be implied. Those warranties extend only to the estate· conveyed and do not have the effect of enlarging the estate or in any manner changing the rule that such deeds will be given interpretation to comport with the intention of the parties at the time of their execution.

By the same reasoning and authority we find ourselves unable to agree with appellant's contention that appellee was estopped by the partition deed from thereafter asserting any rights under his grazing lease. A covenant of warranty in a deed cannot operate by estoppel to confer upon the grantee any greater title than is conferred by the deed itself. Since the partition deed did not have the effect of conferring upon Mrs. Wible and Mrs. Tibbins any title, but only confirmed and set apart to them such interest and title as they already owned and held in the property constituting the estate of E. R. Worthington, any warranty that may be read into the deed by implication could not, by estoppel, confer upon them any title and certainly could not operate to enlarge or add to any title or interest which they theretofore owned in the property involved in the partition or any portion of it. Jones et al. v. State, Tex. Com.App., 5 S.W.2d 973; Wilson v. Beck, Tex.Civ.App., 286 S.W. 315; Carter v. Day, 59 Ohio St. 96, 51 N.E. 967, 69 Am. St.Rep. 757; Yancey v. Radford, 86 Va. 638, 642, 10 S.E. 972; Walling v. Harendt, Tex.Civ.App., 37 S.W.2d 280; Chace v. Gregg, supra, and authorities there cited.

The next contention made by appellant is that the contract of sale executed between him and W. E. Bass for the sale by Bass to appellant of the lands involved was not admissible as evidence for the reason that a deed was thereafter executed by Bass, conveying the land to appellant, and the contract was merged in the deed. The general rule of law which provides that such contracts are merged into deeds afterwards executed in compliance with them cannot be applied here because there were conditions of the contract which had not been performed at the time the deed was executed. The contract provided that Bass would make an effort · to deliver to appellant the north 2000 acres and if he failed to do so, appellant would then be entitled to certain

credits on the note which he was to give as part of the purchase price. Possession of this portion of the land was not delivered to appellant when the deed was executed and the record shows that, not only was Bass obligated to make an effort to procure possession of this portion of the land, but ·that he did make such effort and was not successful. Furthermore, the contract was admissible to show appellant's knowledge of the condition of the title and that he purchased the land with the understanding that he would not obtain possession of it unless arrangements could be made by the seller with appellee and Arrington under which they would be willing to release the possession which they then held. It fixed the rights and status of the parties in regard to possession of the land pending the termination of the grazing lease which were different from those implied in the deed.

 Appellant asserts that the grazing lease held by appellee was void because it is shown that he sub-leased a portion of the land covered by the grazing lease and it is not shown he had permission to do so from his lessor or those who succeeded to the lessor's rights. We do not agree with appellant in this contention. The effect of a sub-leasing of leased premises, without the consent of the lessor, is to give to the lessor the right to forfeit the lease. It does not have the effect of nullifying the lease ipso facto. The sub-lease may become valid and binding by either the agreement, acquiescence or ratification of the lessor. The record does not show any repudiation or objection of those who succeeded to the rights of E. R. Worthington in the land, and we think, in the state of the record before us, the sub-leasing of a portion of the leased premises to Arrington did not affect this case in any sense whatever.

, As has been shown, the contract of sale that was made between Bass and appellant made ample provisions for the conduct of the parties and the situation in which they would be placed in the event possession of the land could not be acquired by Bass from appellee and Arrington. Appellant purchased the land with the understanding that Bass, his grantor, had the option, either to deliver possession of the land, or, in case he should not be able to do so, credit the note with the interest which might accrue up to the expiration of the grazing lease and credit it with an additional $5,000 in the event possession could not be procured from appellee. The record shows Bass made bona fide efforts to procure such possession and that he failed to accomplish his purpose. Under those conditions we think it doubtful that appellant had the right to maintain this cause of action. He took the land under the agreement that upon certain contingencies he would not be entitled to possession until the expiration of the grazing lease. The record shows those contingencies materialized and, when they did, he was entitled to the credits provided by the contract but not to enforce rights which had been foreclosed against him by the happening of the contingencies provided in the contract.

Appellant attacks the action of the trial court in giving to the jury a peremptory instruction in favor of appellee. We do not think the action of the court in this respect was error. There was only one issue of fact in the case and that was the rental value of the land. The parties agreed in open court that its annual rental value was 60¢ per acre, and that it was not necessary for the court to submit that issue to the jury. The agreement removed the only issue of fact in the case, and we find no error in the instruction given by the court.

We have examined all of the assignments of error and propositions presented by appellant, and finding no error to be shown by any of them, the judgment of the trial court is in all respects affirmed.