### EWING et al. v. MORAN.

#### No. 11455.

Court of Civil Appeals of Texas. Galveston.

Dec. 3, 1942.

P. G. Henderson and Cornelius & Heaton, all of Jefferson, for appellants.

Shelburne H. Glover, of Jefferson, for appellee.

GRAVES, Justice.

Appellant, S. W. Ewing, sued appellee, M. M. Moran, in the trial court in trespass to try title for "not more than 9 acres" of land in the James Cooksey survey in Marion County (part of a tract deeded on June 24 of 1939 by John B. Hussey, Jr., et al. to Dolly Bell Key).

Appellee answered that suit by pleas of general denial and not guilty, then specially vouched into the cause J. R. Ostrom—a co-appellant with Ewing herein—and, by cross-action against both Ewing and Ostrom, after disclaiming any interest in the fee of the 9 acres, alleged his own ownership of a then-existing surface lease on the tract, declaring that he had bought the same from Ostrom on or about May, 1936; that both Ostrom and his co-appellant, Ewing, had actual knowledge of the valid

and outstanding existence of that lease, or, in any event, were charged with notice thereof, when, thereafter, they each in turn, respectively, took the deeds through which they claimed to own the tract; that is, Ostrom's deed from Mrs. Dolly Bell Key on March 3 of 1941, and Ewing's deed from Ostrom of August 6 of 1941.

Ostrom, in turn, denied that he had made such sale of the surface lease to appellee, and countered by asserting that, instead, they two, during the month of May, 1936, had made an oral agreement of partnership between them, under which they were to jointly own the improvements thereon, and to operate the surface of the property, and divide the profits between them.

On appellant Ostrom's application, the trial court appointed an auditor, who audited the books of appellee-Moran, the original of which was ordered sent here with the statement of facts.

In response to special issues submitted, the jury found:

(1) That appellee purchased the surface lease on the land from Ostrom in 1936, substantially as alleged by him in his cross-action, including all buildings and improvements thereon;

(2) That there had been no partnership between appellant Ostrom and the appellee, as alleged by Ostrom;

(3) That the appellee had paid Ostrom the $50 yearly rental then agreed upon between them for such lease upon the property for the year 1941.

There were four other findings relating to the expenses and profits in the operation of the property by appellee-Moran from 1936 to December of 1941, which concluded with one to the effect that, during that period, he had realized $1000 of net profits.

After overruling motions of appellant-Ewing for instructed verdict and for judgment non obstante veredicto, the court rendered a judgment upon the verdict, finding that appellant-Ewing was the owner of the fee in the land, but that the appellee-Moran was the owner of the entire leasehold estate therein, as described in the surface lease from John B. Hussey, Jr., et al. to G. T. Haggard, of date February 26 of 1936, that "said lease was assigned from G. T. Haggard to J. R. Ostrom, one of the defendants herein, and that the said J. R. Ostrom, sold, transferred, and assigned the same to M. M. Moran, and that all rentals

have been paid up to and including the year 1941, and that the same is a valid and subsisting lease on said land and premises, and that title thereto is in the defendant, M. M. Moran."

As indicated, both Ewing and Ostrom appeal, making common cause in contending here, in substance, two things: (1) That, since the surface lease, by its terms, was not assignable without the consent of the lessors, which undisputedly had not been obtained, the appellee-Moran could not legally have made the purchase thereof the trial court so found he held under—the attempt to do so having, on the face of the record, been shown to be a complete nullity; (2) that the auditor's report so received by the court was conclusive under the statute, R.S.Article 2292, since neither party had objected or excepted to any particular item, (Rule 172, Texas Rules of Civil Procedure), and since it showed the exact amount of profits realized by the appellee under his tenure of the property, appellant-Ewing had been entitled to his one-half thereof as a matter of law.

After a careful review of the record, this court concludes that the trial court's judgment was correct, and that neither of appellants' positions should be sustained.

■ There is no attack made upon the jury's findings as lacking support in the evidence, appellants having limited their contention to the claim that they had all become immaterial as a matter of law; wherefore, those findings must be accepted here as reflecting the facts, in so far as they are material.

This court concludes that the first three, as above listed, were not only pertinent to the controlling issues of fact properly raised under both the pleadings and the proof, but that, under the law, they render the remaining four findings, dealing alone with the claimed results of the partnership found never to have existed wholly irrelevant and immaterial.

Appellants very ably argue that Article 5237, Vernon's Texas Civil Statutes, forbids sub-letting or assignment of such a surface lease as this one was, without the consent of the landlord or lessor, citing these authorities, among others, Brown v. Johnson, 118 Tex. 143, 12 S.W.2d 543; Gulf, C. & S. F. Ry. v. Settegast, 79 Tex. 256, 15 S.W. 228; Markowitz v. Greenwall Theatrical Circuit Co., Tex.Civ.App., 75 S. W. 74; Tex.Jur., Vol. 27, page 368, paragraph 219, and that for that reason the trial court erred in holding the appellee to have been the owner of it, hence entitled to the whole returns therefrom—in the absence of any partnership between himself and appellant-Ostrom.

Undoubtedly the cited statute does forbid a sub-letting or assignment of such a lease, without the consent of the landlord, and appellants' authorities so hold; but, under the facts here obtaining, that settled rule of law does not apply, to-wit:

The lease in question was executed on February 26, 1935, by John B. Hussey, et al, to G. T. Haggard, for a rental of $50 per year, payable on or before the first day of March, each year, for 10 years. G. T. Haggard assigned it to J. R. Ostrom on February 25, 1937, and Ostrom sold both lease and improvements to Moran in May, 1936. Appellant-Ostrom contended that he and appellee had an agreement relative to a division of the profits from the business, but, as above stated, the jury found that appellee bought the lease outright from Ostrom. By the undisputed evidence appellee had possession of the leased premises, at all times, from 1936 down until this trial below.

On March 3, 1941, J. R. Ostrom, appellant, bought the land in fee from the owner, while appellee was, as above indicated, still in possession. The annual rental for the year 1941 was paid by appellee to appellant-Ostrom, and there is no dispute that all rentals from 1936 to 1941 were paid either by appellant-Ostrom, or by appellee-Moran, to the then-owners of the land. J. R. Ostrom sold the land to appellant, S. W. Ewing, on August 6, 1941, shortly before this suit was filed, and while appellee was still in possession of the lease.

It also undisputedly appears that the only persons who ever complained of the sub-letting of the premises were appellants, J. R. Ostrom, to whom the rent was so paid for the year 1941, and S. W. Ewing, who purchased the fee in the land from Ostrom on August 6, 1941, while appellee was thus in possession of the leased surface premises. S. W. Ewing filed this suit against appellee on September 4, 1941, less than 30 days after he became such purchaser of the fee from his co-appellant, Ostrom.

■ So that, in this instance, Ostrom, to whom the rent for this leasehold was thus paid for 1941, himself became not only the landlord when he purchased the land

itself on March 3 of that year, but he also thereby became both the lessee and the lessor, with the appellee holding as sub-lessee by purchase of the lease from him. It seems clear that Ostrom could not thereafter complain in an issue of who owned the lease with the appellee, of his own wrong in so sub-letting the premises to appellee; nor could his co-appellant, Ewing, take advantage of the cited statute forbidding a sub-letting, since he purchased the land while appellee was in possession of the leasehold thereon, with his rent paid to Ostrom up to March 1 of 1942.

■ In other words, it appears to be equally well settled that the prohibition of that statute against the sub-renting of lands without the prior consent of the landlord, or lessor, is solely for the benefit of the latter, and that he alone is the only one who could complain of the wrong done by such sub-letting.

· Wherefore, it could not be invoked by such a lessee as the appellant-Ostrom thus became against his sub-lessee, the appellee here.

■ Rather, it is thought, the rule thus stated in 27 Tex.Jur., pages 367 and 368, governs the facts at bar: "Thus the right of the sublessor to recover the rental which has been stipulated to be paid by the sublessee is not affected by the fact that the original lessor had not consented to the sub-letting of the premises, the possession of the sublessee not having been interfered with by the lessor. And it has been said that no one but the lessor may complain that the sub-letting is invalid. Likewise, it seems that a stipulation that the lessee shall not sublet the premises without the written assent of the lessor is for the exclusive benefit of the latter, and, if he does not take advantage of it, no one else can."

To the same effect is Huffstutler & Howell v. McKinzie, Tex.Civ.App., 163 S. W. 652.

Appellants' second point is overruled as presenting nothing for review, since the unattacked finding of the jury that no co-partnership ever existed between the appellant-Ostrom and the appellee during the time of the latter's leasehold, entitled him to all the profits he made out of the business, if any.

The judgment will be affirmed.

Affirmed.