Jack L. REYNOLDS, Appellant,

v.

John W. McCULLOUGH, Jr., et al., Appellees.

No. 04–85–00233–CV.

Court of Appeals of Texas, San Antonio.

Sept. 23, 1987.

Rehearing Denied Oct. 15, 1987.

Thomas S. Terrell, Kerrville, for appellant.

James M. Pearl, San Antonio, for appellee.

Before CADENA, C.J., and ESQUIVEL and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment in favor of the appellee, John W. McCullough, Jr., et al. (McCullough), and against the appellant, Jack L. Reynolds (Reynolds) in a suit for possession of leased premises.

McCullough, the lessor, claims ownership of two leaseholds as an assignee of two leases from the original lessee. McCullough leased certain real property to Thorn's Properties, Inc. (Thorn) on August 1, 1974 (Ground Lease). An improvements lease was also executed by McCullough to Thorn on the same date.

On December 10, 1974, Thorn signed an Assignment of Lease which assigned the ground lease to the First National Bank of Kerrville (Bank) as security for a promissory note in the original principal sum of one hundred fifteen thousand dollars ($115,-000.00). On that same date, Thorn signed a deed of trust conveying the ground lease and land to the named trustee. The deed of trust gave the Bank the right to purchase the leases at a trustee's sale. It further provided that the mortgagor would surrender possession and control of the property to the purchaser at that sale.

On November 4, 1977, Thorn signed an Assignment of Lease which assigned the improvements lease to the Bank as security for a promissory note in the original princi-

pal sum of seventy thousand two hundred sixty-eight dollars and seventy-nine cents ($70,268.79). This assignment acted partly as a renewal and extension of the prior note. Thorn also signed a deed of trust which conveyed both leases, the land, and the improvements to the named trustee.

On March 21, 1977, the Secretary of State ordered Thorn's corporate charter forfeited for the failure of the company to pay franchise taxes. On May 6, 1980, the Bank foreclosed on its security interests in the leases and purchased the leases through a trustee's deed. The Bank took possession and control of the leased premises and it paid rent to McCullough.

On December 29, 1982, the Bank attempted, without McCullough's consent, to convey all interest in the leases and premises to Reynolds by a trustee's deed and quit claim deed. McCullough refused to accept any checks tendered by Reynolds for rent. The Bank attempted to cure defects in title by executing a special warranty deed conveying their interest in the ground lease to Reynolds, again, without McCullough's consent.

Reynolds sued McCullough and claimed ownership of two leaseholds as the assignee under the original lease. Reynolds' ownership was to include all improvements and tangible personal property from the inception of the lease. By counterclaim, McCullough sought to terminate the leases. The cause was tried to the trial court which entered a take nothing judgment against Reynolds and found that McCullough was entitled to take possession of the leased premises. Attorney's fees were also awarded to McCullough.

Reynolds alleges the following points of error on appeal:

Points of error one, eight, nine and thirteen complain of the trial court's award of attorney's fees to the appellees and the court's failure to award attorney's fees to the appellant;

Point of error number two complains of the trial court's finding that the ground lease was not freely assignable by the Bank;

Point of error three complains of the trial court's failure to find that the lease contained an implied provision that the lessor's refusal to allow an assignment must be reasonable;

Points of error four and five allege that the trial court committed error in awarding damages of eight hundred dollars ($800.00) per month;

Points of error six and seven allege that the trial court committed error in ruling that the lease was forfeited because the Bank was an indispensable party which was absent from the proceedings;

Point of error ten complains that the violation of a restriction on assignments is a breach of covenant and therefore the trial court committed error in ruling that the lease was forfeited; and

Points of error eleven and twelve allege that the trial court committed error in considering the ground lease and improvements lease together and holding that the ground lease controlled the improvements lease.

Reynolds suggests that the main issue before us is whether the ground lease was assignable by the Bank. The language of the ground lease requiring our consideration is the following:

### IX.

Lessee shall have the right to assign this lease or sublease the leased premises and improvements thereon to Thorn Feed Lot, Inc., without the prior consent of Lessors or such other person, firm, organization or corporation to whom such an assignment or sublease has been given prior written consent by Lessors; but in the event of any assignment or sublease, the Lessee herein shall continue to be responsible to Lessors for all the terms, provisions, and obligations set forth in this lease between Lessors and Lessee. If the interests of Lessee or an assignee or sublease hereunder should be mortgaged, hypothecated, pledged or otherwise placed as collateral, mortgage, hypothecate, pledge or otherwise place as collateral any personal property on the

leased premises owned by Lessee or any assignee or sublessee hereunder, Lessors by these presents do hereby subordinate all rights which they may have under this lease or at law to such mortgage or other lender, or each of them.

In addition we are asked to consider this language in a subordination clause:

Lessee further covenants that Lessee will not, except by way of mortgage of the leasehold estate to secure some actual indebtedness or construction loan, assign or transfer this Lease without the written consent of the majority in interest of the Lessors....

The interest of the Lessors in the leased premises, and the interests of any mortgagee or mortgagees of the fee thereof shall be junior and subordinate to the interest of any mortgagee or mortgagees of the Lessee's interest in the leased premises and the building or buildings thereon.

■ We must decide whether the Bank was a party to the initial loan transaction between McCullough and Thorn. We hold they were not a party. There is no evidence in the record that the Bank was mentioned in the leases or that the two principals considered the Bank to be a third-party beneficiary of their transaction. Our Supreme Court has held:

The intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision. *Banker v. Breaux,* 133 Tex. 183, 128 S.W.2d 23, 24 (1939). In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it *clearly appears* that such was the intention of the contracting parties.

*Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503–04 (Tex.1975) (emphasis added).

■ This Court has before it two written leases, a lease of the ground and a lease for improvements, which must be construed together because they constitute a single transaction between the lessor and lessee. *See Alexander v. Baylor,* 20 Tex. 560, 561 (1857). "In order to ascertain the entire agreement of the contracting parties, separate documents executed at the same time, for the same purpose, and in the course of the same transaction are to be construed together." *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 (Tex.1984); *cf. Henderson v. Little,* 248 S.W.2d 759, 761 (Tex.Civ.App.— Amarillo 1952, writ ref'd n.r.e.) (independent contracts between different parties, not made with reference to each other, may not be construed together though one refers to the other). *But see General Bonding & Casualty Insurance Co. v. McQuerry,* 191 S.W. 858, 859 (Tex.Civ.App.—Amarillo 1917, no writ). As we consider both leases to be part of the same transaction, we will construe them together in order to ascertain the intent of the parties. Accordingly, we overrule point of error number twelve. Furthermore, we refuse to consider the assignment by Thorn to the Bank and the concomitant deed of trust as part of the same lease transaction.

■ The case before us involves the rights which spring from the lease transaction between McCullough and Thorn. The rights in controversy do not issue from the mortgagor/mortgagee relationship which subsequently arose between Thorn and the Bank. *See generally, Citizens National Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941) (stating it is the intention and purpose of the contracting parties, as disclosed by the instrument, which should control). Thorn transferred an assignment of lease and a deed of trust as security for a loan from the Bank. Thorn maintained possession, and it was obligated to follow the covenants of the lease. If Thorn defaulted, the Bank acquired possession of the lease through the deed of trust. The contract between McCullough and Thorn was for Thorn's benefit, and it was not intended to benefit the third party Lender. Since neither Reynolds or the Bank were parties to the original lease transaction, they may not seek to enforce the lease.

Reynolds relies heavily on the subordination clause located in the lease. He alleges that since "all rights" of McCullough are subordinate to the Bank's rights, McCullough cannot interfere with the Bank's exercise of *any* of its rights. Reynolds contends McCullough may not veto the assignment of the lease by the Bank to Reynolds.

Reynolds also alleges that even if the trial court was correct in holding that the subordination clause does not allow the Bank to rightfully assign without McCullough's consent, the common law of Texas is that the restriction on assignment applies only to the first assignment from Thorn to the Bank with the language of the ground lease placing the restriction only upon an assignment by the original lessee, Thorn's Properties, Inc. Reynolds argues that McCullough waived its right of consent over subsequent assignments made by the Bank by virtue of McCullough's alleged acceptance of rent checks from the Bank.

█ It is established in Texas that waiver is a question of fact for the trier of fact to determine. *Andrews v. Powell*, 242 S.W.2d 656, 662 (Tex.Civ.App.—Texarkana 1951, writ ref'd n.r.e.). Waiver must be clearly proven, and the proof must amount to more than a scintilla of evidence, surmise, or suspicion. *First State Bank v. Jones*, 107 Tex. 623, 183 S.W. 874, 877 (1916). Waiver is an intentional relinquishment or surrender of a right that, at the time, is known to the party. *The Praetorians v. Strickland*, 66 S.W.2d 686, 689 (Tex. Comm'n App.1933, judgmt adopted).

█ It is obvious from his pleadings and testimony in the record that McCullough did not intend to waive any of his rights regarding the real property or leases except as specified in the original lease between McCullough and Thorn. McCullough intentionally waived any requirement of his consent if Thorn should mortgage his interest in the leasehold. A possible consequence of such a mortgage could be Thorn's default and the subsequent acquisition of the leasehold by the Bank as tenant. In fact there could be no other interpretation of the leases since McCullough contracted away his right to prohibit the assignment by the lessee to the Bank. The subsequent rejection of rent checks offered by Reynolds is clear evidence of McCullough's desire to exercise his right to prohibit the Bank's assignment which was executed without McCullough's prior consent.

█ Furthermore, the requirement of consent applies to the original lessee and all subsequent assignees. As Reynolds concedes, the term "Lessee" is defined in the preamble to the ground lease as including the successors and assigns of the original lessee. It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193, 196 (Tex.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts will give effect to the intention of the parties as expressed or as is apparent in the writing. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). In the usual case, the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement, and this purpose should not be thwarted except in the plainest case of necessary repugnance.[1] *Woods v. Sims,*

---

1. The issue of the Bank's transfer of the lease without the lessor's consent is also argued by the assignee, Reynolds. Reynolds asks us to consider 12 U.S.C. § 29 (1982) in the construction of the leases. Reynolds argues that this statute provides that a National Bank can only hold title to real estate when it is acquired as security, and then only in that event for five years. Since that statute was in existence at the time the leases were executed, Reynolds argues, they were a part of the leases execution. Reynolds alleges that when this "implied provision" is read in conjunction with the lease provision that "all of lessor's rights are subordinated to those of the lender," the only conclusion to be reached is that the Bank could transfer the lease without the lessor's consent. We disagree.

Reynolds would like to see the Bank in the impossible situation of the law instructing it that it can't hold this real property and the lessor telling the Bank it cannot sell it. This proposition is untenable. The Bank was not forced into the transaction with Reynolds; it chose to enter into the transfer in what it perceived to be its best interests. The banking law

154 Tex. 59, 273 S.W.2d 617, 620 (1954); RESTATEMENT OF THE LAW OF CONTRACTS § 230 (1932). We hold that McCullough's written consent of the lessor was required prior to the Bank's assignment to Reynolds.

We overrule Reynolds second and eleventh points of error.[2]

■ Reynolds argues in his third point of error that this Court should adopt the rule in California which states that there is an implied covenant of reasonable consent required of every landlord in a lease transaction. We decline to do so.

Our courts were faced with a similar case in which a tenant sought a court's declaration that his assignment of the lease in question was valid in *Lawther v. Super X Drugs of Texas, Inc.*, 671 S.W.2d 591 (Tex.App.—Houston [1st Dist.] 1984, no writ). The issue before the court was whether the parties clearly expressed an intent to avoid the prohibition of the Law of April 18, 1876, ch. 93, § 5, Tex.Gen.Laws 137, 8 H. GAMMEL, LAWS OF TEXAS 973 (1876), *repealed by*, Act of Jan. 1, 1984, ch. 576, § 6, 1983 Tex.Gen.Laws 3729 (hereinafter art. 5237); *See Lawther*, 671 S.W.2d at 593. The State public policy on assignment of leases is expressed by art. 5237:

> During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord.

■ By operation of law, art. 5237 is a part of all lease contracts in Texas. *American National Bank & Trust Co. v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 316 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). In order to change this statutory prohibition against assignments without consent, the parties must clearly express such an intent. *Young v. De la Garza*, 368 S.W.2d 667, 670 (Tex.Civ.App.—Dallas 1963, no writ). In *Lawther*, the court held that the tenants did not have a

right, as a matter of law, to assign the lease without the landlord's consent in the absence of an expression of intent by the parties to avoid the statutory prohibition against assignments without consent. *Lawther*, 671 S.W.2d at 594.

The lessor and lessee in the original lease transaction did not choose to avoid the statutory prohibition of art. 5237. Instead, the parties created an exception regarding the mortgaging of the lessee's interest. The Bank's assignment could have been valid if it had sought McCullough's prior written consent. However, it chose not to do so, and there is no evidence before us to support the notion that McCullough intended to contract away his right of consent to assignments subsequent to the one made by Thorn to the Bank.

Reynolds argues that there should exist an implied covenant in every lease transaction which binds McCullough, the lessor, to act reasonably when he withholds his consent to an assignment. Reynolds fails to provide any Texas authority for this proposition. The limitation on the transfer of a leasehold estate is for the lessor's sole benefit. A lessor may contract, by provision in the lease, not to unreasonably withhold his consent to an assignment or sublease of the premises. This type of provision is in the nature of a promise or covenant which, if breached, could be grounds for an action for damages. *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809, 813 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). Absent this promise, we hold that there is no implied covenant by the lessor to act reasonably in withholding his consent.

We overrule Reynolds' third point of error.

■ Reynolds argues in his fourth and fifth points of error that he would only be liable for compensatory damages if we hold that the Bank's assignment was a breach

does nothing to erase the lessor's right to exercise its consent to any transfer.

**2.** McCullough cites *Cockrell v. Houston Packing Co.*, 105 Tex. 283, 147 S.W. 1145, 1151 (1912) for the proposition that the mortgagee of a lease who takes possession of the leased premises is

in the attitude of an assignee and he is liable to the lessor for any rents. Our Supreme Court has held that the rule in *Cockrell* is not well-settled and none of our appellate courts have followed it. *Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 317 S.W.2d 47, 51 (Tex.1958).

of the lease. The trial court allowed McCullough to recover from Reynolds eight hundred dollars ($800.00) per month with prejudgment interest from July 25, 1983 to the date the judgment was signed. The trial court entered a finding of fact that the fair rental value of the demised premises and improvements is eight hundred dollars ($800.00) per month. We will sustain the findings of the trial court if there is any evidence in the record in support of them. *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286, 289 (1951). The record reflects that McCullough testified, on cross-examination, that the fair market rental value of the leased premises was eight hundred dollars ($800.00) per month. The trial court had before it McCullough's answer, and counterclaim, which sought damages for Reynolds' trespass.

We hold that the trial court correctly concluded that McCullough was entitled to damages which were properly supported by the evidence in the record. Points of error four and five are overruled.

■ Reynolds' sixth and seventh points of error claim reversible error was established by McCullough's failure to join the Bank as an indispensable party. We disagree.

With the enactment of TEX.R.CIV.P. 39, the legislature clarified the many unresolved questions concerning the joinder of parties. Rule 39 reads, in pertinent part, as follows:

JOINDER OF PERSONS NEEDED FOR JUST ADJUDICATION

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he had not

been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

■ The resulting issue before a trial court is whether to proceed with those parties present in the lawsuit. In the case at bar, no one raised the issue of the nonjoinder of an indispensable party. Reynolds argues that the Bank was an indispensable party to McCullough's counterclaim seeking cancellation of the lease. One of the practical factors which a trial court may take into consideration in holding that an absent party was not jurisdictionally indispensable was whether the case had actually been tried as to those parties who were present and there was no objection at the trial level concerning the nonjoinder of a party. *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200, 204 (Tex.1974). The reasoning should be clear that "at the appellate stage there is reason not to throw away a judgment just because it did not theoretically settle the whole controversy." *Continental Insurance Co. of New York v. Cotten*, 427 F.2d 48, 51 (9th Cir.1970). Under rule 39, it would be rare indeed if there were a person whose presence was so indispensable in the sense that his absence deprives the court of jurisdiction to adjudicate between the parties already joined.

At bar, the trial court's judgment states the following:

The Court finds that the Defendants, JOHN W. MCCULLOUGH, JR., ET AL., having failed to join the First National Bank of Kerrville as a party in this cause, are not entitled in this action to a cancellation of the leases which were subject of this suit, which is without prejudice to their right to bring such action against First National Bank of Kerrville or other party.

In determining whether judgment is final, an appellate court is ordinarily limited to what the trial court states in its judgment and what might or could have been done is not in issue. *Speer v. Stover*, 711 S.W.2d 730, 734 (Tex.App.—San Antonio 1986, no writ).

Reynolds has failed to show this Court any harm to himself or the Bank by the trial court's denial of McCullough's counterclaim.

We overrule Reynolds' sixth and seventh points of error.

■ Reynolds also complains in points of error one, eight, nine and thirteen of the judgment of the court with reference to the manner in which court costs were apportioned. The judgment reads as follows:

The Court further finds that the Defendants should have and recover of and from the Plaintiff Jack L. Reynolds reasonable attorney's fees in the amount of $17,500.00 with remittiturs as follows:

$10,000.00 if no appeal is prosecuted to the Court of Appeals;

5,000.00 if no application for writ of error is prosecuted; and

2,500.00 if application for writ of error is denied or refused.

All costs of court should be adjudged against the Plaintiff, JACK L. REYNOLDS.

This form of judgment has been approved in several cases before the courts of civil appeals. One of our courts has said: "If the remittitur casts doubt on the finality of the judgment there is no reason why it may not be disregarded for appeal purposes as in *Cooksey*." *International Security Life Insurance Co. v. Spray*, 468 S.W.2d 347, 349 (Tex.1971) (citing *Security Life Insurance Co. v. Executive Car Leasing Co.*, 433 S.W.2d 915, 919 (Tex.Civ.App.—Texarkana 1968, writ ref'd n.r.e.) and analyzing *Cooksey v. Jordan*, 104 Tex. 618, 143 S.W. 141, 141 (1912)). Similar to the judgment in *International Security Life Insurance Co.*, the judgment before us fixes a total award first and then adds a proviso which reduces the award by remittitur in the absence of appellate steps. Absent a showing by Reynolds that the trial court abused its discretion in entering this type of judgment, we hold the trial court committed no reversible error in its calculation of costs.

Reynolds also argues that the trial court was bound by the Declaratory Judgment Act to make findings that an award of attorney's fees to McCullough was based on principles of equity and justice. Reynolds cites no authority for this proposition and, absent a showing of an abuse of the trial court's discretion in making such an award, we decline to reverse on this point of error.

We overrule Reynolds' first, eighth, ninth, and thirteenth points of error.

Reynolds urges this Court to consider, in the alternative to point of error number two, that McCullough's failure to include a forfeiture provision in the original lease waived any right of forfeiture.

In its judgment and conclusions of law, the trial court held that McCullough was entitled to the immediate and exclusive possession of the property. The court based this conclusion on the finding that the assignment between the Bank and Reynolds was ineffective due to the lack of McCullough's consent; Reynolds enjoyed the status of a trespasser or stranger to McCullough. *See American National Bank v. First Wisconsin Mortgage Trust*, 577 S.W.2d 312, 316 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.) (citing *Brown v. Johnson*, 118 Tex. 143, 12 S.W.2d 543, 545 (1929)). As such, the purpose of the lease was frustrated and, in the contemplation of the lease's original parties, terminable at McCullough's option.

■ The issue before us is this: Absent a forfeiture provision in a lease, does a lessor have a right of forfeiture when a lessee breaches a covenant against assignments/subleases?

In *Nardis Sportswear v. Simmons*, 147 Tex. 547, 218 S.W.2d 451, 454 (1949), our Supreme Court stated that where a covenant against assignment in a lease does not provide for a forfeiture in the event of an assignment *and* the lessor accepts *rents* from the tenant, the lessor has no intention to forfeit the lease. In *Dillingham v. Williams*, 165 S.W.2d 524, 526 (Tex.Civ.App.—El Paso 1942, writ ref'd w.o.m.), the court ruled that, in the absence of a forfeiture provision the right to forfeit and reenter will not lie for the failure to pay rent.

However, our courts have decided this issue in the opposite manner as well. In *Edwards v. Worthington*, 118 S.W.2d 328, 333 (Tex.Civ.App.—Amarillo 1938, no writ), the court was faced with an appellant who alleged that a grazing lease held by the appellee was void because the appellee had subleased a portion of the premises without the lessor's permission. The court disagreed with the appellant on this by stating the following:

> The effect of a sub-leasing of a leased premises, without the consent of the lessor, is to give to the lessor the right to forfeit the lease. It does not have the effect of nullifying the lease ipso facto. The sublease may become valid and binding by either the agreement, acquiescence or ratification of the lessor.

*Edwards*, 118 S.W.2d at 333.

■ It is undisputed that McCullough did not attempt to ratify or acquiesce to Reynolds' tenancy. It is equally clear from the pleadings that McCullough did not seek the payment of rents owed but rather he rejected all rental payments from Reynolds and sought the cancellation of the lease. The provision against assignments in the lease before us is for McCullough's benefit. An assignment of the lease in violation of such a provision does not invalidate the lease, nor relieve the lessee from the obligations imposed by such a lease or the assignee who assumes them. *Nelson v. Seidel*, 328 S.W.2d 805, 807 (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.).

> In other words, it appears to be equally well settled that the prohibition of that statute against the subrenting of lands without the prior consent of the landlord, or lessor, is solely for the benefit of the latter, and that he alone is the only one who could complain of the wrong done by such subletting.

*See Ewing v. Moran*, 166 S.W.2d 760, 763 (Tex.Civ.App.—Galveston, 1942, no writ).

■ Given this context, it has been held by our courts that a lease provision to the effect that 'any attempt to assign the lease shall terminate all rights granted to the lessee' is a condition subsequent and not a limitation. *Nelson*, 328 S.W.2d at 807.

That is, the lease would not terminate unless the lessor undertook to terminate it or declare a forfeiture or reenter. *Nelson*, 328 S.W.2d at 807. Once again the rationale being that such a provision exists for the sole benefit of the lessor. The early English rule considered a lease provision which stated that the lease should become void on the tenant's default in the performance of stipulations to be a limitation, ipso facto terminating the estate on the happening of a contingency. *Nelson*, 328 S.W.2d at 807. We see no reason why the lack of a forfeiture provision in a lease should be construed against the lessor's interest. The termination of a lease because of the breach or default of the lessee is at the option of the lessor.

Cases holding to the contrary are distinguishable for significant reasons. In *Darnell v. Waldrop*, 57 S.W.2d 392 (Tex.Civ.App.—Eastland 1933, no writ), the court was faced with *pleadings which were insufficient* to state a cause of action. The lease did not contain a forfeiture provision. The court held that if the pleadings had sufficiently charged a breach of the obligations under the lease, the right to cancellation would not follow without the provision on forfeiture. *Id.* at 394. In *Moore v. Kirgan*, 250 S.W.2d 759 (Tex.Civ.App.—El Paso 1952, no writ), the court was faced with a lease which did not contain a forfeiture provision. The court applied the common law which stated in the absence of a provision for forfeiture a lessee does not forfeit his term by using the demised premises for *illegal purposes* or business. *Moore*, 250 S.W.2d at 767 (emphasis added). In *Outlaw v. Boren*, 285 S.W.2d 280 (Tex.Civ.App.—Amarillo 1955, writ ref'd n.r.e.), the court was faced with a suit between joint owners of mineral interests involving the construction of a mineral conveyance from the defendants to the plaintiff's grantor. The court held that a restraint on alienation imposed on a *fee simple title* is unenforceable unless the instrument in which the restraint is imposed provides for an enforceable penalty in the event of violation. *Outlaw*, 285 S.W.2d at 283.

In addition, the cases which Reynolds relies most heavily for support are inapplicable. In *Davis v. Skipper*, 125 Tex. 364, 83 S.W.2d 318 (1935), the court was faced with a deed which contained restrictive language requiring the premises to be used for church purposes. The court was not faced with facts similar to those before us; therefore its holding in regards to the reversion is not applicable. In *Nardis Sportswear v. Simmons*, 147 Tex. 608, 218 S.W.2d 451 (1949), the court had before it a lease which did not provide for a forfeiture in the event of a violation of the covenant against assignments. The court held that the lessor's actions in accepting rents clearly disclosed an intention *not* to forfeit the lease. *Nardis*, 218 S.W.2d at 454. As stated earlier, the lessor clearly rejected all rents in the instant case.

However, the cases are uniform in their application of forfeiture to cases involving leases without forfeiture provisions. A very early case, *Moser v. Tucker*, 87 Tex. 94, 26 S.W. 1044, 1046 (1894), involved an interpretation of Sayles Civil Statutes art. 3122 which stated:

> If lands or tenements are rented by the landlord to any person or persons, such person or persons renting said lands or tenements during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney.

The court in *Moser* was faced with creditors who sought the sale of the leasehold estate to satisfy debts incurred by Moser's lessee. In establishing the policy which guides us to this day, the court held:

> On the same foundation, in view of the statute, stands the rule which denies Moser & Son any estate they could pass by voluntary act, which is conclusive against the right of their creditors to any claim against defendants, who became tenants of the owner of the premises, and subject to all the duties and obligations that relation imposes, if holding by his consent, or, *if holding without his consent subject to such liabilities as any trespassers.* (Emphasis added); *see also Dodson v. Moore*, 272 S.W. 263, 265

(Tex.Civ.App.—Amarillo 1925, no writ) (where court refuses to allow a trespasser to profit from his position).

Another early case, *Markowitz v. Greenwall Theatrical Circuit Co.*, 75 S.W. 74 (Tex.Civ.App.1903), *rev'd on other grounds*, 79 S.W. 1069 (Tex.1904) interpreted the 1895 codified, revised statute to art. 5237, article 3250. Virtually identical in language, art. 3250 prohibited subletting without the landlord's consent and the court held the statute granted the landlord a right to forfeit the lease. *Mankowitz*, 75 S.W. at 76. In *Hudgins v. Bowes*, 110 S.W. 178, 179 (Tex.Civ.App.1908, no writ), the court cited *Moser* and held that where a tenant sublet a part of the demised premises without the consent of his landlord, his lease was therefore forfeited.

We overrule Reynolds' point of error number ten.

Accordingly, we affirm the judgment of the trial court.

CADENA, Chief Justice, concurring.

I agree that the judgment of the trial court should be affirmed. But since the owner of the leasehold interest, the First National Bank of Kerrville, is not a party to the litigation it is not bound by that portion of the judgment which purports to terminate its leasehold interest. The forfeiture of the lease is of no interest to appellant Reynolds and in no way affects his rights. Under these circumstances I would not blindly follow such decisions as *Hudgins v. Bowes*, 110 S.W. 178, 179 (Tex. Civ.App.1908, no writ) without even attempting to explain how an instrument which contains no language of condition and no provision for reentry creates a condition subsequent. *Bowes* relies solely on *Moser v. Tucker*, 87 Tex. 94, 26 S.W. 1044 (1894) as support for its holding that a subletting by the tenant without the consent of the landlord terminates the interest of the tenant. *Moser* did not so hold because (1) it involved no subletting or assignment and (2) the continued existence of the tenant's right to possession was not in question.

The rule that forfeiture of rights in property is regarded with disfavor and that an instrument will not be interpreted as providing for a forfeiture unless that intention is plainly indicated should not be avoided by merely referring to a case which makes no effort to justify its conclusion and misinterprets the only authority on which it relies.