**TRINITY PROFESSIONAL PLAZA ASSOCIATES, Appellant,**

v.

**METROCREST HOSPITAL AUTHORITY, Appellee.**

No. 11–96–00064–CV.

Court of Appeals of Texas, Eastland.

Feb. 25, 1999.

---

4. The *Robledo* opinion does not indicate whether it was tried to the trial court or to a jury.

James R. Jordan, Renie McCulellan, Jordan Law Firm, Dallas, for appellant.

Lewis T. Leclair, McKool Smith PC, Dallas, Lori A. Leu, Lori A. Leu PC, Plano, for appellee.

Before WRIGHT, J., and McCLOUD, S.J.,* and DICKENSON, S.J.**

## OPINION

AUSTIN McCLOUD, Senior Justice (Retired).

The principal issue in this case is whether a ground lease, as opposed to a fee simple conveyance, contains an unreasonable restraint on alienation. Both lessor[1] and lessee[2] filed motions for summary judgment.

---

\* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

\*\* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Lessor is Metrocrest Hospital Authority. Farmers Branch Hospital Authority was the former name of lessor. Carrollton Community Hospital and Carrollton General Hospital form part of the medical center operated by lessor.

2. Lessee is Trinity Professional Plaza Associates. Carrollton Professional Building Associates was the predecessor to lessee.

The trial court granted lessor's motion and denied lessee's motion. Lessee appeals. We affirm.

Lessor is an instrumentality of the State of Texas created as a nonprofit unit of local government pursuant to Chapter 262 of the Texas Health & Safety Code. Lessor is authorized to construct, purchase, enlarge, furnish, or equip one or more hospitals and to operate and maintain one or more hospitals. TEX. HEALTH & SAFETY CODE ANN. § 262.022 (Vernon 1992). Lessor's bylaws state that lessor's mission and purpose is to finance, evaluate, and oversee the development and operation of health care facilities, services, and projects to ensure optimum quality health care of all types appropriate to lessor's defined service area.

In 1984, lessor leased the land in question to lessee's predecessor. The initial term of the lease was 55 years; however, the lease will be "automatically renewed" for consecutive 10–year terms. The initial term plus the renewal terms cannot exceed 99 years. The lease states that lessor desires to establish on its land two medical office buildings to provide an opportunity for active members of the medical staff to establish offices on lessor's grounds. The lease provides that lessee desires to acquire the use of lessor's land to erect the two buildings. During the term of the lease, lessee has title to the two buildings. Upon termination of the lease, title to the two buildings vests in lessor.

One of the key provisions in the lease permits lessee to transfer or assign the lease to a new assignee so long as the assignee or transferee meets the definition of "Qualified Persons." Qualified persons are defined in Section 6.2 of the ground lease as:

QUALIFIED PERSONS are defined as a natural person or a partnership, professional association, professional corporation, corporation or other entity, which is comprised of individuals or other entities comprised of individuals, provided such natural persons or entities are each in good standing on the Medical or Dental Staff of the medical center operated by FARMERS BRANCH HOSPITAL AUTHORITY at the campus currently denoted as DEDMAN MEDICAL CENTER and/or CARROLLTON COMMUNITY HOSPITAL and/or CARROLLTON GENERAL HOSPITAL and are active or provisional active members thereof; or are associates (of an active member or of a provisional active member) who have obtained courtesy status or provisional courtesy status approval.

Regarding assignment, the lease reads:

13.1. *ASSIGNMENT AND TRANSFER OF LEASE.* This LEASE may be assigned by LESSEE to any QUALIFIED PERSON or any firm, corporation, partnership or other entity composed solely of QUALIFIED PERSONS, and shall be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators and assigns. Thereafter, any reference to LESSEE contained herein shall *ipso facto* refer to such assignee.

Section 13.4 of the lease expressly provides that an assignment can only be made to "Qualified Persons." The section states:

13.4. *ASSIGNEE, TRANSFEREE OR RECONSTITUTED LESSEE.* Anything herein contained to the contrary notwithstanding, any permitted assignee, permitted transferee or reconstituted LESSEE must be comprised solely of QUALIFIED PERSONS. Moreover, any such assignment, transfer or reconstitution shall be null and void and of no force or effect unless LESSOR shall first have given its written consent to any such assignment, transfer or reconstitution. The withholding or granting of such consent shall be predicated upon LESSOR's right to review and approve the Partnership Agreement (or Articles of Incorporation, Bylaws and Stock Agreements in the case of a corporation) of any such entity; upon any such entity being comprised solely of QUALIFIED PERSONS; and upon the compliance or non-compliance with the governing documents of such entity with the terms of this GROUND LEASE.

This dispute arose when lessee attempted to sell the two buildings and its interest in the ground lease to Merit Texas Properties, Inc., a real estate development company. Merit did not meet the definition of "Qualified Persons" in the lease.

In several related points of error, lessee argues that the lease imposes an unreasonable restraint on alienation. Lessor answers lessee's arguments by differentiating a leasehold estate from a fee simple conveyance.

Lessee maintains that the leasehold estate in this case is in "reality a hybrid estate" bearing some of the attributes of a leasehold and many of the attributes of a fee simple estate. Lessee points out that the lease term, in the aggregate, is 99 years and that lessor has a right of first refusal to purchase the buildings should Lessee find a qualified purchaser. There is summary judgment proof that the pool of buyers who met the "Qualified Persons" test is so small as to be essentially nonexistent. Lessee maintains that the two medical buildings in question have been taken off of the commercial market for the life of all persons involved in the original contract.

Lessor answers that it is vital to the success of lessor's health care facilities that the surrounding buildings provide office space to physicians who will support lessor's hospitals. Lessor maintains that the cooperative relationship leads to the success of both the health care facilities and the physicians and, thereby, benefits the surrounding community. Lessor contends that the ground lease was freely negotiated between lessee and lessor. The physicians who comprised the original lessee entered into the lease in part to obtain depreciation tax benefits and low interest rates that resulted from lessor's governmental status. Lessor asserts that lessee's partners have not been harmed by the contract with lessor. Lessor contends that the partners have received large financial awards. As landlords, the partners receive substantial distributions each year from the rent income remaining after meeting the obligations related to the buildings.

Lessee cites out-of-state authority that embraces the "minority rule" to support its argument that the lease imposes an unreasonable restraint on alienation. In *Funk v. Funk*, 102 Idaho 521, 633 P.2d 586 (1981), the lease agreement provided that the lessee would have the right and privilege to sublease or assign the lease "provided that the consent of the Lessor is first obtained." The court held that the consent of a lessor may not be "unreasonably withheld." The court observed that, in "recent times, the necessity of reasonable alienation of commercial building space has become paramount in our ever-increasing urban society." The court further noted:

> The imposition of a reasonableness standard also gives greater credence to the doctrine that restraints on alienation of leased property are looked upon with disfavor and are strictly construed against the lessor.

The California Supreme Court in *Kendall v. Ernest Pestana, Inc.*, 40 Cal.3d 488, 220 Cal. Rptr. 818, 709 P.2d 837, 849 (1985), adopted the minority view, stating:

> In conclusion, both the policy against restraints on alienation and the implied contractual duty of good faith and fair dealing militate in favor of adoption of the rule that where a commercial lease provides for assignment only with the prior consent of the lessor, such consent may be withheld only where the lessor has a commercially reasonable objection to the assignee or the proposed use.

See now CAL. CIV. CODE ANN. §§ 1995.210–1995.270 (West Supp.1999); see also *Ringwood Associates, Ltd. v. Jack's of Route 23, Inc.*, 153 N.J.Super. 294, 379 A.2d 508 (1977), aff'd, 166 N.J.Super. 36, 398 A.2d 1315 (1979); Alex M. Johnson, Jr., *Correctly Interpreting Long–Term Leases Pursuant to Modern Contract Law: Toward a Theory of Relational Leases*, 74 Va. L.Rev. 751 (1988).

 The authorities cited by lessee are not controlling. TEX. PROP. CODE ANN. § 91.005 (Vernon 1995) provides:

> During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord.

This statutory prohibition forbids an assignment as well as a sublease. *Heflin v. Stiles*, 663 S.W.2d 131 (Tex.App.—Fort Worth 1983, no writ). Section 91.005 expresses the public policy of this State. In order to change this statutory prohibition against assignments without consent, the parties must clearly express such an intent. *Lawther v. Super X*

*Drugs of Texas, Inc.*, 671 S.W.2d 591, 592 (Tex.App.—Houston [1st Dist.] 1984, no writ). The court in *Farina v. Calvary Hill Cemetery*, 566 S.W.2d 650, 652 (Tex.Civ. App.—Texarkana 1978, writ ref'd n.r.e.), recognized that the interests created by long-term ground leases do not equate to fee simple ownership. The lease agreement between the parties involved a leasehold estate. It is not a fee simple interest. The "Qualified Persons" requirement is not an impermissible restraint. Lessee's Points of Error Nos. 1, 2, 3, 8, and 9 are overruled.

Lessee urges in its fourth point that Section 13.4 of the lease is ambiguous and subject to more than one reasonable meaning. Whether a contract is ambiguous is a question of law for the court. *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.1995). No phrase, sentence, or section of a contract should be isolated and considered apart from the other provisions. *Forbau v. Aetna Life Insurance Company*, 876 S.W.2d 132 (Tex.1994). Section 13.4 begins with the clear intent of the provision:

> Anything herein contained to the contrary notwithstanding, any permitted assignee, permitted transferee or reconstituted LESSEE must be comprised solely of *QUALIFIED PERSONS.* (Emphasis added)

Clearly, Section 13.4 directs lessor to withhold consent if a proposed assignee does not meet the qualified persons requirement. There is no ambiguity regarding this requirement. The fourth point is overruled.

In Points of Error Nos. 6 and 7, lessee argues that lessor acted unreasonably in refusing to consent to the proposed assignment. Lessee was not required to act reasonably in withholding consent. The court in *Reynolds v. McCullough*, 739 S.W.2d 424, 429 (Tex.App.—San Antonio 1987, writ den'd), correctly stated the rule:

> The limitation on the transfer of a leasehold estate is for the lessor's sole benefit. A lessor may contract, by provision in the lease, not to unreasonably withhold his consent to an assignment or sublease of the premises. This type of provision is in

the nature of a promise or covenant which, if breached, could be grounds for an action for damages. *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809, 813 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.). Absent this promise, we hold that there is no implied covenant by the lessor to act reasonably in withholding his consent.

See also *Young v. De La Garza*, 368 S.W.2d 667, 670 (Tex.Civ.App.—Dallas 1963, no writ).

Lessee did not contract for a reasonableness provision in the ground lease. Section 13.4 of the lease gives lessor the absolute right to withhold consent. *Julian v. Christopher*, 320 Md. 1, 575 A.2d 735 (1990), cited by lessee, is not persuasive. There, the court was concerned with a "silent consent" clause which provided that the premises could not be assigned or sublet without the written consent of lessor. The landlord in *Julian* attempted to withhold consent in order to obtain higher rental payments. The court decided to overrule a prior case that held that, if the lease contained a "silent consent" clause, the landlord had the right to withhold consent even though the withholding of consent was arbitrary and unreasonable. In overruling the prior case, the court noted that there were two public policy reasons why the law should be changed. The first was the restraint on alienation, and the second was "the public policy which implies a covenant of good faith and fair dealing in every contract." The contract between the parties in the instant case expressly provided that lessor shall withhold consent to an assignment of the ground lease if the proposed assignment is to an individual or entity that does not meet the "Qualified Persons" requirement. Furthermore, our Supreme Court has specifically rejected the implication of a general duty of good faith and fair dealing in all contracts. *Crim Truck & Tractor Co. v. Navistar International Transportation Corporation*, 823 S.W.2d 591 (Tex. 1992); *English v. Fischer*, 660 S.W.2d 521 (Tex.1983). The court in *Texaco Refining and Marketing, Inc. v. Crown Plaza Group*, 845 S.W.2d 340, 342 (Tex.App.—Houston [1st Dist.] 1992, no writ), held that there was no duty to act in good faith in an ordinary commercial contract where there was no spe-

cial relationship between the parties. Moreover, *Julian* conflicts with *Reynolds v. McCullough*, supra.. We overrule lessee's sixth and seventh points of error.

Lessee asserts in its fifth point of error that a question of fact exists as to whether lessor waived its right to insist that the proposed assignee be comprised solely of qualified persons. Lessor urges that the doctrine of waiver was not properly raised at the trial court. We agree. Lessee did not allege waiver in its first amended original petition. The doctrine of waiver was not specifically alleged in lessee's motion for summary judgment as a ground for summary judgment. Lessee directs us to an allegation in its motion that there are a number of current partners of lessee who no longer meet the definition of "Qualified Persons." We note that this statement was included in a long list of "Undisputed Facts" in connection with lessee's argument that the qualified persons requirement in Section 13.4 is a void, unreasonable restraint. The doctrine of waiver, now urged by lessee on appeal, was not expressly presented to the trial court. TEX.R.CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979); *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 341 (Tex.1993). Lessee's fifth point is overruled.

The judgment of the trial court is affirmed.